See MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 237
Docket:      Yor-17-198
Argued:      November 15, 2017
Decided:     December 21, 2017

Panel:       ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

KEYBANK NATIONAL ASSOCIATION

v.

ESTATE OF EULA W. QUINT et al.

ALEXANDER, J.

[¶1]  KeyBank National Association appeals from a judgment entered by the District Court (Springvale, *Dobson, J.*) in favor of Vickie L. Kilton and the Estate of Eula W. Quint on KeyBank's complaint for a residential foreclosure.[1] KeyBank challenges the court's denial of its motion to continue the trial and the court's determination that KeyBank did not lay a proper foundation for admitting the loan servicing records pursuant to the business records exception to the hearsay rule.  *See* M.R. Evid. 803(6).  We affirm the judgment.

---

[1]  The Estate of Eula W. Quint did not participate in the appeal, but remains on the promissory note and the mortgage and has not been dismissed from the litigation.

## I. CASE HISTORY

[¶2]   On September 30, 2015, KeyBank filed a complaint for a residential foreclosure against Quint and Kilton in the District Court.  Shortly thereafter, Kilton contacted KeyBank to report that Quint had died.  After the appointment of a special administrator for Quint's estate, the Estate, represented by counsel, filed an answer denying the allegations in the complaint and waiving mediation.  *See* M.R. Civ. P. 93(m).  Kilton did not file an answer or otherwise defend in the matter until the trial management conference in December 2016.   At that conference, she appeared unrepresented.

[¶3]  On April 14, 2017, the court held a nonjury trial.  Neither counsel for the Estate nor the personal representative was present at trial.  Kilton appeared, represented by an attorney who had filed a notice of limited appearance that day.  *See* M.R. Civ. P. 11(b); M.R. Prof. Conduct 1.2(c), (d).

[¶4]  KeyBank moved to continue the trial for at least a month, stating that, with the assistance of her attorney, Kilton could apply for a loan modification.  KeyBank added that the Estate was not present and therefore was unable to protect its interest in the property.  Kilton objected to the motion, arguing, inter alia, that she believed that KeyBank requested a

continuance because it did not have sufficient evidence to support its claim. After confirming that Kilton understood the risk of declining the opportunity for a loan modification and noting that KeyBank's burden at trial was not dependent on the Estate's presence, the court denied KeyBank's motion.

[¶5] When the trial began, KeyBank first called Kilton to testify. Kilton admitted that she had executed a promissory note in favor of KeyBank, which was secured by a mortgage on property located in Parsonsfield, and that she had failed to make payments due on the note. On cross-examination, she testified that, when she first obtained the loan, she received monthly bills from "Countrywide."

[¶6] KeyBank's only other witness was a "complex liaison" from PHH Mortgage Services, which, he testified, is the current loan servicer for KeyBank and handles the day-to-day operations of managing and servicing loan accounts. The complex liaison testified that he has been an employee of PHH in the foreclosure department for seven years. As part of his training, he had worked with supervisors of various departments—including loss mitigation, collections, servicing, and escrow—to understand those departments' processes. He further stated that he participates in training annually and

4

continues to meet with members of other departments on a regular basis, particularly when a question on a loan arises.

[¶7] The complex liaison testified that when an event occurs on an account, such as contact with the borrower or receipt of a payment, the event is documented in the account on the same day. He stated that he does not have the ability to alter a business record once it has been entered into the system. He also described PHH's physical and digital security, as well as PHH's "clean-desk policy" and sign-off procedure.

[¶8] The complex liaison testified that he has training on and personal knowledge of the "boarding process" for loans being transferred from prior loan servicers to PHH and of PHH's procedures for integrating those records. He explained that transferred loans are put through a series of tests to check the accuracy of any amounts due on the loan, such as the principal balance, interest, escrow advances, property tax, hazard insurance, and mortgage insurance premiums. He further explained that if an error appears on the test report for a loan, that loan will receive "special attention" to identify the issue, and, "[i]f it ultimately is something that is not working properly, then that loan will not . . . transfer." Loans that survive the testing process are transferred to PHH's system and are used in PHH's daily operations.

[¶9] The complex liaison testified that he has access to and is familiar with PHH's records and that his responsibilities include reviewing those records on a daily basis. He is also responsible for attending trials, depositions, settlement conferences, and mediations. He stated that before attending a judicial proceeding in a foreclosure action, he reviews everything related to that foreclosure. Specific to this case, he testified that the records related to the loan from KeyBank to Kilton and Quint were kept in the regular course of PHH's business. He stated that the loan is past due since March 2009 and that PHH took over servicing of the loan "well after that point."[2]

[¶10] The court admitted in evidence, without objection, KeyBank's exhibits one through six, which included a copy of the original promissory note dated April 29, 2002;[3] a copy of the recorded mortgage; the purported assignment of the mortgage by Mortgage Electronic Registration Systems, Inc., from KeyBank to Bank of America recorded on January 9, 2012; the ratification of the January 2012 assignment recorded on March 6, 2015; the

---

[2] The witness testified that when PHH took over servicing of the file, PHH "did a transfer with multiple reviews." Kilton objected to the testimony arguing that there was a lack of foundation. Before the court ruled on the objection, KeyBank offered to reword its question, but then asked a question on a related but different issue. The challenged testimony is therefore not a part of the record.

[3] The court examined the original promissory note, which KeyBank's counsel retained.

recorded assignment of the mortgage from Bank of America to KeyBank dated October 10, 2012; and the notice of default and right to cure issued to Kilton and Quint by KeyBank in August 2015. The complex liaison testified that an allonge affixed to the promissory note transferred the note to "Bank of America, N.A. as Successor by Merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP," but was later voided.

[¶11] Pursuant to the business records exception to the hearsay rule, M.R. Evid. 803(6), KeyBank moved to admit exhibit seven, which consisted of screenshots from PHH's computer system purporting to show the amounts owed, the costs incurred, and the outstanding principal balance on Kilton and Quint's loan. Kilton objected, arguing that PHH's records were based on the records of prior servicers and that KeyBank had not established that the witness had knowledge of the record-keeping practices of either Bank of America or Countrywide. The court determined that the complex liaison's testimony was insufficient to admit exhibit seven pursuant to the business records exception. KeyBank conceded that, without exhibit seven, it would not be able to prove the amount owed on the loan, which KeyBank correctly acknowledged was an essential element of its foreclosure action. Kilton moved for a judgment as a matter of law, *see* M.R. Civ. P. 50(d), and the court

entered a judgment in favor of Kilton and the Estate. KeyBank timely filed this appeal. *See* 14 M.R.S. § 1901 (2016); M.R. App. P. 2 (Tower 2016).[4]

## II. LEGAL ANALYSIS

### A. Business Records Exception

[¶12]   KeyBank's primary contention on appeal is that the trial court erred by finding that it had not laid a proper foundation for admitting PHH's loan servicing records pursuant to the business records exception when the complex liaison offered detailed testimony about his training and experience in—and PHH's procedures for—receiving and integrating records of prior loan servicers.

[¶13]   A trial court's determination regarding whether the necessary factual foundation to admit evidence pursuant to the business records exception has, or has not, been established is reviewed for clear error. *Beneficial Me. Inc. v. Carter*, 2011 ME 77, ¶ 9, 25 A.3d 96; *Maine Appellate Practice* § 419 at 278 (4th ed. 2013). A "clear error" standard on evidentiary foundation issues requires us to determine if the trial court's ruling is supported by and consistent with the facts that appear in the record. *See State v. Dilley,* 2008 ME 5, ¶ 25, 938 A.2d 804; *State v. Buchanan,* 2007 ME 58, ¶ 8,

---

[4]   This appeal was filed before September 1, 2017; therefore, the restyled Maine Rules of Appellate Procedure do not apply. *See* M.R. App. P. 1 (restyled Rules).

8

921 A.2d 159. When the appealing party was the proponent of the evidence that was not admitted at trial, that party "must demonstrate that a contrary finding was compelled by the evidence." *Handrahan v. Malenko*, 2011 ME 15, ¶ 13, 12 A.3d 79.

[¶14] "Business records are hearsay and therefore inadmissible pursuant to M.R. Evid. 802 unless they meet the requirements of the business records exception in M.R. Evid. 803(6)." *Ocean Communities Fed. Credit Union v. Roberge*, 2016 ME 118, ¶ 9, 144 A.3d 1178. M.R. Evid. 803(6) provides that a business record is admissible if

> (A) The record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) Making the record was a regular practice of that activity;
>
> (D) All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11), Rule 902(12) or with a statute permitting certification; and
>
> (E) Neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

[¶15] "A qualified witness is one who was intimately involved in the daily operation of the business and whose testimony showed the firsthand

nature of his knowledge." *HSBC Mortg. Servs. v. Murphy*, 2011 ME 59, ¶ 10, 19 A.3d 815 (alteration omitted). The qualified witness "need not be an employee of the record's creator." *Carter*, 2011 ME 77, ¶ 13, 25 A.3d 96. For example, "if the records [from the producing business] were received and integrated into another business's records and were relied upon in that business's day-to-day operations, an employee of the receiving business may be a qualified witness." *Id.* In such instances, the business records will be admissible "if the foundational evidence from the receiving entity's employee is adequate to demonstrate that the employee had sufficient knowledge of *both businesses'* regular practices to demonstrate the reliability and trustworthiness of the information." *Id.* (emphasis added).

[¶16] *Carter* provides the criteria that must be established when a party seeks to admit integrated business records. *Id.* ¶¶ 12-14. The witness must demonstrate knowledge that

- the producer of the record at issue employed regular business practices for creating and maintaining the records that were sufficiently accepted by the receiving business to allow reliance on the records by the receiving business;

- the producer of the record at issue employed regular business practices for transmitting them to the receiving business;

- by manual or electronic processes, the receiving business integrated the records into its own records and maintained them through regular business processes;

- the record at issue was, in fact, among the receiving business's own records; and

- the receiving business relied on these records in its day-to-day operations.

*Id.* ¶ 14. Thus, a witness may lay a proper foundation to admit integrated business records if the witness's testimony satisfies the requirements of both M.R. Evid. 803(6) and *Carter*, 2011 ME 77, ¶¶ 12-14, 25 A.3d 96.

[¶17] With these standards in mind, we turn to the record in this case. The complex liaison provided substantial testimony establishing that he had firsthand knowledge of PHH's practices and that he was "intimately involved in the daily operations of the business."[5] *See Homeward Residential, Inc. v. Gregor*, 2015 ME 108, ¶ 14 n.11, 122 A.3d 947. Nevertheless, he was not qualified to lay the foundation for the admission of the screenshots from PHH's computer system purporting to show the amount owed on the loan

---

[5] The complex liaison testified to his job title, his job responsibilities, the number of years that he had served in that position, his training, his direct observation of the loan servicer's daily operations, his level of familiarity with the records, how the records are received from prior servicers, how those records are checked for accuracy, the procedure for handling transferred records that contain errors, how the records are accessed and what security measures are in place, where the records are maintained, how often he accesses the records, the nature of the servicer's role as related to the bank, the servicer's responsibilities and activities regarding the bank's accounts, his level of preparation in reviewing records for foreclosure proceedings, and PHH's servicing of Kilton and Quint's loan for KeyBank.

because PHH's records integrated the records of prior servicers, and the complex liaison provided no testimony about the "regular business practices" of those prior servicers.[6]

[¶18]   The record available to us contains gaps regarding the loan servicing history.  On April 29, 2002, Kilton and Quint signed a promissory note in the amount of $65,000 in favor of KeyBank.  After they obtained the loan, Kilton received monthly bills from Countrywide.  By an undated allonge, KeyBank endorsed the note to the order of Bank of America as successor by merger to BAC Home Loans Servicing, which was formerly known as Countrywide Home Loans Servicing.  On an unknown date, the allonge to the note was voided, transferring the interest in the note back to KeyBank.  Kilton and Quint defaulted on the loan on March 1, 2009, and PHH took over servicing of the loan for KeyBank "well after that point."

[¶19]   Except for Kilton's testimony that she initially received monthly bills from "Countrywide," the record is devoid of evidence concerning who

---

[6]  This case is distinguishable from *Midland Funding LLC v. Walton*, 2017 ME 24, 155 A.3d 864, a credit card debt collection case.  In *Midland Funding*, we affirmed a trial court's finding that a sufficient foundation had been established pursuant to the business records exception, M.R. Evid. 803(6), to permit a representative of a debt servicer for Midland to testify from her electronic records demonstrating the amount of the debt and the transfer history of the account from Barclays Bank Delaware to Midland.  *Id.* ¶¶ 4-7, 28.  While the debt servicer's representative did not have knowledge of the day-to-day operations of Barclays, the loan originator, *id*. ¶¶ 6, 21 n.4, the trial court's finding of sufficient foundation for admission of her testimony about the business records was supported because the debtor's "own admissions confirm[ed] the accuracy of the records reflecting his particular indebtedness."  *Id*. ¶¶ 9, 18, 27.

serviced the loan from the date the note was executed until PHH began servicing the loan at some point in time well after March 2009. Although the witness testified about the procedures employed by PHH to check for accuracy when boarding loans from other servicers, his testimony was insufficient to establish that those prior loan servicers engaged in regular business practices that satisfy the requirements of M.R. Evid. 803(6) and *Carter*. Based on this record, the trial court did not err by determining that KeyBank did not lay a proper foundation for admitting PHH's loan servicing records that were based on records of other loan servicers that preceded PHH, and KeyBank has not demonstrated that the evidence compelled a contrary finding.[7]

B.    Motion for a Continuance

[¶20]    KeyBank also argues that the court abused its discretion by denying its motion to continue because Kilton's appearance at trial with counsel constituted unfair surprise, and KeyBank would have prepared for trial in a substantially different manner had it received notice that there would be opposing counsel. We review a court's decision to deny a request

---

[7]    KeyBank's admission at oral argument before this Court further supports the trial court's ruling. At oral argument, Kilton asserted that exhibit eight, which was not presented to the trial court, demonstrated that the loan was serviced by Bank of America from 2002 to 2014. When questioned directly whether Bank of America or Countrywide serviced the loan after the note was executed, KeyBank admitted that Kilton's assertion was true.

for a continuance for an abuse of discretion. *Hero v. Macomber*, 2016 ME 4, ¶ 7, 130 A.3d 398. When reviewing the trial court's denial of a motion to continue, "we look first at the reasons contemporaneously presented in support of the request for the continuance because the party seeking a continuance has the burden of establishing a substantial reason why granting the continuance would further justice." *Id.* We then examine "whether the denial had any adverse prejudicial effect on the movant's substantial rights." *Id.*

[¶21] At trial, KeyBank presented two reasons to support its request for a continuance: (1) Kilton could now apply for a loan modification with her attorney's assistance, and (2) the Estate was not present. Kilton expressly rejected the loan modification option, which had no effect on KeyBank's trial strategy, and KeyBank conceded at trial that the Estate's absence would not affect the outcome of the case. Because KeyBank did not establish a substantial reason as to why a continuance would further the interests of justice, the trial court did not abuse its discretion by denying the motion.

[¶22] On appeal, KeyBank offers different reasons to support its request for a continuance. *See Teel v. Colson*, 396 A.2d 529, 534 (Me. 1979) ("It is a well settled universal rule of appellate procedure that a case will not

be reviewed by an appellate court on a theory different from that on which it was tried in the court below."). Even if KeyBank properly preserved this argument for appellate review, we are not persuaded that, in the circumstances presented here, a party's appearance at trial, with or without counsel, constitutes unfair surprise warranting a continuance. Nor are we persuaded that KeyBank was prejudiced. Kilton's attorney's appearance did not change KeyBank's burden of proof, and Kilton called no witnesses and offered no evidence to which KeyBank might have had to respond.

[¶23] Thus, the trial that was actually held was no different than the trial for which KeyBank should have been prepared. *See Fox Island Granite Co. v. Am. Granite Mfrs., Inc.*, 2006 ME 14, ¶¶ 4-8, 890 A.2d 700 (concluding that a party's lack of preparation for a damages hearing did not justify a continuance); *Pelletier v. Pelletier*, 597 A.2d 60, 61 (Me. 1991) (concluding that the trial court did not abuse its discretion by denying a motion to continue based on a party's lack of preparation when that party had sufficient notice of the hearing, had a full opportunity to present his case, and failed to demonstrate any prejudice).

The entry is:

Judgment affirmed.

Brent L. Messinger, Esq. (orally), Andrea T. Holbrook, Esq., and David C. West, Esq., Portland, for appellant KeyBank National Association

Thomas A. Cox, Esq. (orally), Portland, for appellee Vickie L. Kilton

Frank D'Alessandro, Esq., Chet Randal, Esq., and Jonathan E. Selkowitz, Esq., Pine Tree Legal Assistance, Inc., Portland, for amicus curiae Pine Tree Legal Assistance, Inc.

John D. Clifford, IV, Clifford & Golden, P.A., Lisbon Falls, for amicus curiae Maine Attorneys Saving Homes

Springvale District Court docket number RE-2015-79
FOR CLERK REFERENCE ONLY