ALEXANDER, J., dissenting.
[¶ 23] I concur in the Court's holding affirming the trial court's grant of partial summary judgment determining that Darron Burrill is liable for breach of contract as a result of his allowing an unauthorized driver to damage a vehicle owned by Avis Rent a Car System, LLC. With liability decided, the Court recognizes that there are no genuine issues of material fact that there was "some amount of damage as a result of the breach." Court's Opinion ¶ 14.
*592 [¶ 24] The amount of damage, including some amounts that do not appear to be disputed, is established by the affidavit submitted by the Avis claims representative. The Court references M.R. Evid. 902(11) to suggest that Avis may have given insufficient notice of its intention to rely on the affidavit to prove a point without calling a live witness. Court's Opinion ¶ 17 n.8. As the Court's opinion recognizes, Avis was prepared to present a live witness to support its damages evidence, but the live witness was, erroneously in my view, excluded by the trial court. Court's Opinion ¶ 7.
[¶ 25] The Court approves the use of the affidavit, recognizing that, pursuant to M.R. Evid. 902(11), it is possible to lay the foundation for admission of a business record, M.R. Evid. 803(6), without a live witness. Court's Opinion ¶ 20. I respectfully dissent from that part of the Court's opinion holding that portions of the affidavit and supporting exhibits provided by the Avis claims representative, who was assigned to value the claim and be a custodian of the records related to the claim, do not qualify as business records pursuant to M.R. Evid. 803(6), and thus may not support award of any damages in this matter.
[¶ 26] "Business records are hearsay and therefore inadmissible pursuant to M.R. Evid. 802 unless they meet the requirements of the business records exception in M.R. Evid. 803(6)." KeyBank Nat'l Ass'n v. Estate of Quint , 2017 ME 237, ¶ 14, 176 A.3d 717. When admission of evidence as a business record is challenged, we review the trial court's foundational findings to support admissibility for clear error and its ultimate determination of admissibility for an abuse of discretion. JPMorgan Chase Bank, N.A. v. Lowell , 2017 ME 32, ¶ 8, 156 A.3d 727 ; Midland Funding LLC v. Walton , 2017 ME 24, ¶ 18, 155 A.3d 864.
[¶ 27] M.R. Evid. Rule 803(6) authorizes the admissibility of a business record if
(A) The record was made at or near the time by-or from information transmitted by-someone with knowledge;
(B) The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
(C) Making the record was a regular practice of that activity;
(D) All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11), Rule 902(12) or with a statute permitting certification; and
(E) Neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.
[¶ 28] The purpose of the business records exception is "to allow the consideration of a business record, without requiring firsthand testimony regarding the recorded facts, by supplying a witness whose knowledge of business practices for production and retention of the record is sufficient to ensure the reliability and trustworthiness of the record." Beneficial Me. Inc. v. Carter , 2011 ME 77, ¶ 12, 25 A.3d 96. Important for this case, "[t]he affiant whose statements are offered to establish the admissibility of a business record ... need not be an employee of the record's creator." Id. ¶ 13. Thus, "if the records," in this case vehicle valuation records, "were received and integrated into another business's records and were relied upon in that business's day-to-day operations, an employee of the receiving business may be a qualified witness." Id.
[¶ 29] A qualified witness must demonstrate knowledge that the producer of the record used regular business practices to *593 create the record; the receiving business integrated the record into its own records and maintained them through regular business processes; and the receiving business relied on these records in its day-to-day operation. See id. ¶ 14. If the affiant demonstrates the requisite knowledge, records created by another source, applying its regular business practice, will be admissible pursuant to M.R. Evid. 803(6). Id.
[¶ 30] The Avis representative's affidavit of damages bases its information on several sources, not just the J.D. Power report focused on by the Court. There is no dispute that the Avis representative assembled and possessed the business records and that she, herself, calculated the damages amounts asserted by Avis and found by the trial court.
[¶ 31] The Avis records include a copy of an invoice for $155 for towing charges incurred by Avis. A copy of that invoice is included in the appendix. Other than a generalized hearsay objection, there is no dispute indicated in the record that the towing charge was incurred, that Avis was billed for the charge, that the bill was paid, or that the bill was made a part of Avis's business records in the regular course of Avis's business. Accordingly, the towing charge being part of Avis's business records, there was no apparent basis to object to the trial court's use of the $155 towing charge in calculating the total damages amount.
[¶ 32] There also appears to be no dispute about the calculation of the salvage proceeds for the vehicle in the amount of $6,905.
[¶ 33] The primary dispute relates to the calculation of the fair market value of the vehicle at the time of the loss, which the claims representative asserted was $20,601.98. This claim is based on a J.D. Power/Mitchell Vehicle Valuation Report attached as Exhibit B to the Avis representative's affidavit. This report demonstrates that it is based on a review of documentary evidence, including vehicle valuations for comparable vehicles available for sale in the Las Vegas area. These valuations are drawn from AutoTrader.com, Cars.com and other sources, including dealer contacts. Most of the report appears to reflect document-based reviews, necessary considering the very fast time for preparation of the valuation report provided to the Avis claims representative.
[¶ 34] The trial court found that the Avis representative reasonably relied on the J.D. Power report in reaching her conclusions regarding the vehicle valuation and that the vehicle valuation report was admissible as part of the Avis business records pursuant to M.R. 803(6) after finding that "the Affidavit provide[d] a sufficient foundation for the reliability and trustworthiness of the report." The court based that finding on the following observations: the vehicle valuation report was made within two days of the accident; preparing and maintaining such a report would be in the ordinary course of business for a claims representative at a car-rental company, whose job it is to create a complete and reliable record of the damage to a car; and nothing indicated that the report was prepared in an unusual or untrustworthy way. The court also referenced the inclusion of J.D. Power's valuation methodology in the report, which the court found to be "rigorously objective and mathematical, and transparent about its sources of information."
[¶ 35] In reality it appears that the valuation report damages number was determined largely by subtracting the undisputed salvage proceeds from the valuations of comparable vehicles offered for sale in the Las Vegas area, identified by an internet review.
*594 [¶ 36] Burrill has not demonstrated that the trial court clearly erred in its findings. The Avis representative certified that the valuation report was "prepared at the request of and on behalf of Avis" and that the report was "kept within the claim file for this incident; maintained as part of [her] duties as a Claims Examiner for Avis; kept in the regular course of Avis's business and part of its regularly conducted activity; that it was made at or reasonably soon after the incident; and that the copy is an exact duplicate of the original." Because the trial court did not err, and because the valuation report fits within this Court's articulation of the purpose of the business records exception to the hearsay rule, it was within the court's discretion to admit the affidavit in its entirety. See Midland Funding LLC , 2017 ME 24, ¶ 18, 155 A.3d 864.
[¶ 37] As the trial court stated: "Avis may not be in the vehicle valuation business, but its car rental activities require reliable means of valuating cars," especially in instances where its rental cars sustain damage. The Avis claims examiner appropriately requested a third party in the vehicle valuation business to create a report on the vehicle's valuation prior to damage from an accident. The report was "kept within the claim file for [each] incident" and "kept in the regular course of Avis's business and part of its regularly conducted activity." Although litigation may be possible in some instances of damage to Avis's rental cars, a vehicle valuation report commissioned immediately after a vehicle has been damaged cannot be considered to have been "prepared in anticipation of litigation" by an advocate in the same way that a forensic report prepared by an expert advocating for one party would be. See State v. Tomah , 1999 ME 109, ¶ 10, 736 A.2d 1047.
[¶ 38] The Court's application of the business records exception to reject all of Avis's claimed damages and direct an award of only nominal damages disregards the damages not addressed in the J.D. Power report, including the apparently undisputed $155 towing charge. Court's Opinion ¶ 41. Thus, rather than nominal damages, damages of at least $155 are established without regard to the propriety, or impropriety, of the claims representative's utilizing the J.D. Power report in making her calculations.
[¶ 39] As to that report, the trial court correctly found that the Avis representative properly utilized that valuation report, with its method of calculation explicitly documented and based largely on documentary information available in business records, vehicle valuation reports, or on the internet through websites such as AutoTrader.com and Cars.com-material that appears to be regularly and widely utilized in calculating car valuations and car appraisals in today's internet age.
[¶ 40] Burrill does not challenge the amount of damages awarded; he only challenges the admission of the claims representative's affidavit in its entirety as a basis for the award. Because the trial court did not err or abuse its discretion in determining that the affidavit and its attachments satisfied M.R. Evid. 803(6), this Court should affirm the award of damages in the amount of $15,342.57, or a lesser amount that includes the undisputed towing charge, and the undisputed salvage proceeds deducted from the comparable vehicle valuation based on apparently undisputed document reviews.
[¶ 41] Burrill also challenges the court's award of attorney fees to Avis. He does not challenge the amount of the award but argues that because this Court should determine that the court erred in granting Avis's motion for partial summary judgment, *595 it should also vacate the attorney fees award as well. Because this Court should affirm the grant of partial summary judgment and the award of damages, it should also affirm the award of attorney fees. See Estate of Gagnon , 2016 ME 129, ¶¶ 15-16, 147 A.3d 356. The rental contract provided for attorney fees in the event of a breach. Avis submitted an attorney fee affidavit outlining the charges. It was within the trial court's discretion to grant the attorney fees in the amount included in the attorney fees affidavit.