MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2020 ME 33
Docket:        And-19-325
Submitted
  On Briefs:   February 26, 2020
Decided:       March 17, 2020

Panel:         GORMAN, JABAR, HUMPHREY, and HORTON, JJ.
Majority:      GORMAN, JABAR, and HUMPHREY, JJ.
Concurrence:   HORTON, J.

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-EQ1

v.

JIM A. GORDON

GORMAN, J.

[¶1] Jim A. Gordon appeals from a judgment of foreclosure entered by the District Court (Lewiston, *Martin, J.*) in favor of U.S. Bank, N.A. Gordon argues that U.S. Bank did not own the mortgage and, therefore, lacked standing to foreclose. We affirm the judgment.

## I. BACKGROUND

[¶2] The following facts are either undisputed or taken from the judgment and are viewed in the light most favorable to U.S. Bank as the prevailing party. *See M&T Bank v. Plaisted*, 2018 ME 121, ¶ 5, 192 A.3d 601. In December of 2006, Gordon executed a promissory note in the amount of

$136,000 to EquiFirst Corporation. The note was later endorsed to U.S. Bank. On the same day that he executed the note, Gordon signed a mortgage on property in Lisbon Falls to secure that debt. The mortgage listed EquiFirst as the "lender" of the money and named Mortgage Electronic Registration Systems, Inc. (MERS) as EquiFirst's "nominee" to record the mortgage.

[¶3] In March of 2009, MERS executed and recorded a document (the 2009 assignment) stating that MERS, "as nominee for EquiFirst . . . , hereby assigns" the mortgage to U.S. Bank. In July of 2016, EquiFirst executed and recorded a "Ratification of Assignment" (the 2016 ratification) stating, in part, that EquiFirst "does hereby ratify the transfer of [the] mortgage as memorialized by" the 2009 assignment.

[¶4] In November of 2016, U.S. Bank filed a complaint for foreclosure. At a testimonial hearing, the court admitted, over Gordon's objection, a copy of the 2016 ratification pursuant to M.R. Evid. 803(14). By decision dated April 16, 2019, the court concluded that U.S. Bank had standing to foreclose pursuant to the 2016 ratification, and entered a judgment of foreclosure in favor of U.S. Bank.

[¶5] Gordon timely appealed. *See* M.R. App. P. 2B(c)(2).

## II. DISCUSSION

[¶6]  Gordon argues that U.S. Bank lacked standing to foreclose because (1) the 2016 ratification was inadmissible hearsay, and (2) even if the 2016 ratification were admissible, it was insufficient to prove U.S. Bank's ownership of the mortgage.[1]  We address these issues in turn.

### A.  Admissibility

[¶7]  "We review a court's decision to admit or exclude alleged hearsay evidence for an abuse of discretion."  *State v. Sweeney*, 2019 ME 164, ¶ 13, 221 A.3d 130 (alteration omitted) (quotation marks omitted).  The trial court admitted the 2016 ratification pursuant to M.R. Evid. 803(14), which provides that a "record of a document that purports to establish or affect an interest in property" is admissible if, inter alia, "[t]he record is admitted to prove the content of the original recorded document, along with its signing and its delivery by each person who purports to have signed it."

[¶8]  The plain language of Rule 803(14) allowed the court to admit the copy of the 2016 ratification.  The 2016 ratification "purports to . . . affect an interest in property," *id.*, by purporting to effectuate an assignment of the

---

[1]  U.S. Bank concedes that, absent the admission and effect of the 2016 ratification, it would lack standing pursuant to our decision in *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶¶ 12-17, 96 A.3d 700.

mortgage. Furthermore, contrary to Gordon's contentions, the copy of the 2016 ratification was admitted "to prove the content of the original recorded document"—in this case, to prove the content of the ratification itself, along with its having been signed by EquiFirst. *Id.* The court did not abuse its discretion by admitting the copy of the 2016 ratification.

B.      Ownership of the Mortgage

[¶9]   Gordon challenges the court's legal conclusion that the 2016 ratification effectively transferred the mortgage's ownership to U.S. Bank, a question of standing that we review de novo. *See Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 7, 2 A.3d 289.

[¶10]   An effective ratification of a prior act generates the legal consequences that would have resulted if the prior act had been carried out by a person acting with actual authority. *See Estate of Frost*, 2016 ME 132, ¶ 19, 146 A.3d 118; Restatement (Third) of Agency §§ 4.01(1), 4.02(1) & cmt. b (Am. Law Inst. 2006). A prior act may be ratified "if the actor acted or purported to act as an agent on the [later ratifier's] behalf." Restatement (Third) of Agency § 4.03.

[¶11]  When MERS executed the 2009 assignment to U.S. Bank, stating that it did so "as nominee for EquiFirst," it was purporting to act as EquiFirst's

agent. *See id.* In 2016, when EquiFirst executed the ratification, it gave effect to the previously ineffective 2009 assignment. *See id.* § 4.01(1), 4.02(1). One legal consequence was the transfer of EquiFirst's ownership interest in the mortgage—including the right to foreclose—to U.S. Bank. *See Estate of Frost*, 2016 ME 132, ¶ 19, 146 A.3d 118; *Greenleaf*, 2014 ME 89, ¶¶ 12-17, 96 A.3d 700. The court did not err in concluding that U.S. Bank had standing.[2]

The entry is:

Judgment affirmed.

---

HORTON, J., concurring.

[¶12] I concur in the result but would affirm for a different reason.

[¶13] The majority concludes that U.S. Bank established standing by showing that EquiFirst ratified the March 2009 assignment of the mortgage from Mortgage Electronic Registration Systems, Inc. (MERS) to U.S. Bank. *See* Court's Opinion ¶¶ 10-11.

---

[2] We are unpersuaded by Gordon's argument that the court abused its discretion by admitting U.S. Bank's statement of the amounts owed on the mortgage note, along with supporting documentation from the loan servicer, pursuant to the business records exception to the rule against hearsay, M.R. Evid. 803(6). *See Midland Funding LLC v. Walton*, 2017 ME 24, ¶¶ 18, 20-21, 155 A.3d 864; *KeyBank Nat'l Ass'n v. Estate of Quint*, 2017 ME 237, ¶¶ 13, 17, 176 A.3d 717.

6

[¶14]  Assuming any assignment of the mortgage was necessary to establish U.S. Bank's standing, I would affirm on the ground that the assignment from MERS to U.S. Bank conveyed legal title to the mortgage and was sufficient to confer standing.  The majority's reasoning is based on recent decisions that depart substantively from our longstanding precedent and from the modern rule regarding transfer of mortgages.

[¶15]  Beginning in the nineteenth century and until recently, Maine law was clear that ownership of a real estate mortgage automatically followed the note that was secured by the mortgage.  *See Holmes v. French*, 70 Me. 341, 344-45 (1879) ("The purchaser and owner of the mortgage debt is the equitable owner and assignee of the mortgage.  The mortgage is incident and collateral to the debt secured by it, and an assignment of the debt carries with it, in equity, the mortgage.  This rule is too well settled to require the citation of authorities in its support."); *Wyman v. Porter*, 108 Me. 110, 120-21, 79 A. 371, 375 (1911); *Farnsworth v. Kimball*, 112 Me. 238, 243, 91 A. 954, 956 (1914); *Pratt v. Bank of America, N.A.,* 2013 U.S. Dist. LEXIS 151671, at *13-15 (D. Me. Sept. 4, 2013) *adopted by* 2013 U.S. Dist. LEXIS 150644 (D. Me. Oct. 21, 2013).

[¶16]  Before the merger of law and equity, our decisions spoke in terms of equitable and legal title, but the underlying principle was clear—the party

entitled to enforce the note was entitled to enforce the mortgage, even if some other entity held legal title to the mortgage. *See Jordan v. Cheney*, 74 Me. 359, 361-62 (1883). Under those pre-merger cases, assignment of the note automatically transferred equitable title to the mortgage, and no separate assignment of legal title to the mortgage was necessary. *See id.* at 361 ("[I]t is not necessary that there should be any recorded transfer of the notes or mortgage. Nor is an assignment of the mortgage necessary.").

[¶17] Our mortgage law jurisprudence reflected the mainstream view. *See Carpenter v. Longan,* 83 U.S. 271, 275 (1872) ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter.").

[¶18] When one entity owned the note and another held legal or record title to the mortgage, the record owner of the mortgage held legal title in trust for the owner of the note under the equitable trust doctrine. *See Jordan*, 74 Me. at 361. Moreover, no transfer of legal title was necessary in order for the party entitled to enforce the note to maintain a judicial foreclosure action on the mortgage. *See Holmes*, 70 Me. at 345 ("When the mortgage is not legally assigned with the debt, the assignee of the debt has a right to use the name of the mortgagee in a suit to enforce the mortgage; and he is not required to resort

to the court in equity for that purpose unless the mortgagee refuses to permit his name to be used."); *Averill v. Cone*, 129 Me. 9, 12, 149 A. 297, 299 (1930).

[¶19]  The modern majority rule on the transfer of mortgages dispenses with the distinction between equitable and legal title and provides simply that a transfer of ownership of the note transfers ownership of the mortgage unless otherwise agreed.  *See* Restatement (Third) of Property: Mortgages § 5.4(a) (Am. Law Inst. 1997) ("A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise."). The Restatement makes clear that no separate assignment of the mortgage is necessary in order for an assignment of the note to transfer ownership of the mortgage.[3]  *Id.* § 5.4 cmt a.

---

[3]  The Restatement comment to section 5.4(a) states:

> It is conceivable that on rare occasions a mortgagee will wish to disassociate the obligation and the mortgage, but that result should follow only upon evidence that the parties to the transfer so agreed.  The far more common intent is to keep the two rights combined.  Ideally a transferring mortgagee will make that intent plain by executing to the transferee both an assignment of the mortgage and an assignment, indorsement, or other appropriate transfer of the obligation.  But experience suggests that, with fair frequency, mortgagees fail to document their transfers so carefully.  This section's purpose is generally to achieve the same result even if one of the two aspects of the transfer is omitted.

Restatement (Third) of Property: Mortgages § 5.4 cmt. a (Am. Law Inst. 1997).

[¶20] Our foreclosure statute reflects the same principle by requiring "proof of ownership" of the mortgage note and only "evidence" of the mortgage. 14 M.R.S. § 6321 (2018). Similarly, we have said that a "mortgagee" with standing under section 6321 to bring a foreclosure action is "a party that is entitled to enforce the debt obligation that is secured by a mortgage." *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 11, 2 A.3d 289 (emphasis omitted).

[¶21] In 2010, we held that MERS is not a "mortgagee" or a "person claiming under the mortgagee" as those terms are used in 14 M.R.S. § 6321. *See Saunders*, 2010 ME 79, ¶¶ 10-15, 2 A.3d 289. We said that MERS was a "nominee" with "bare legal title to the property for the sole purpose of recording the mortgage and the corresponding right to record the mortgage with the Registry of Deeds." *Id.* ¶ 10.

[¶22] In several other recent cases, we have assumed without discussion that MERS can transfer legal title to a subsequent mortgagee. *See Bank of Am., N.A. v. Cloutier*, 2013 ME 17, ¶ 4, 61 A.3d 1242 ("MERS subsequently assigned the mortgage to BAC Home Loans Servicing, LP."); *HSBC Bank USA, N.A. v. Gabay*, 2011 ME 101, ¶ 14, 28 A.3d 1158 ("The December 22, 2008, assignment,

entitled 'ASSIGNMENT OF MORTGAGE,' assigned MERS's interest in the mortgage, but not the note, to HSBC.").

[¶23]   Thus, as recently as 2013, a federal court noted that "to [the court's] knowledge there is no Maine case holding that MERS lacks a sufficient legal interest in the mortgages it holds to validly reassign the mortgages to other entities for purposes of foreclosure."  *See Pratt,* 2013 U.S. Dist. LEXIS 151671, at *15.

[¶24]   In recent years, however, our decisions on the transfer of mortgages have substantially departed from the foregoing precedent and the corresponding modern Restatement rule.

[¶25]   In *Bank of America, N.A. v. Greenleaf*, we concluded that the mortgage in question—identical to the mortgage in this case—"granted to MERS 'only the right to record the mortgage.'"  2014 ME 89, ¶ 14, 96 A.3d 700 (quoting *Saunders*, 2010 ME 79, ¶ 11 n.3, 2 A.3d 289).  In so holding, we departed from our previous view that MERS also held legal title to the mortgage.  *See Saunders*, 2010 ME 79, ¶ 10, 2 A.3d 289.

[¶26] Our decisions since *Greenleaf* appear to assume that an assignment of the mortgage note, instead of carrying with it ownership of the mortgage, severs ownership of the mortgage from ownership of the mortgage note

regardless of the intentions of the parties to the assignment. *See Beal Bank USA v. New Century Mortg. Corp.*, 2019 ME 150, ¶¶ 10, 14-15, 217 A.3d 731. This is contrary to our precedent and the modern rule on the transfer of mortgages.

[¶27] In *Beal Bank*, we abrogated what we called "the dated equitable trust doctrine" as it applies to real estate mortgages. *Id.* ¶¶ 14-15 ("We therefore conclude that although the holder of the note may retain some equitable interest in the accompanying mortgage, any such interest, standing alone, does not equate to actual ownership of the mortgage nor is it sufficient to establish a 'pre-foreclosure right' to compel its assignment." (emphases omitted)). We did so for the stated purpose of conforming the law to our new "bifurcated standing analysis" in *Greenleaf. Id.* ¶ 14.

[¶28] The equitable trust doctrine has long undergirded the principle that ownership of the mortgage follows ownership of the note. *See Jordan*, 74 Me. at 361. If standing to foreclose requires the plaintiff to prove formal ownership of legal title to a mortgage and if the equitable trust doctrine no longer enables the owner of the mortgage note to obtain legal title to the

mortgage, the continued vitality of the principle that the ownership of the mortgage follows ownership of the mortgage note is in question.[4]

[¶29] I would revisit our recent mortgage law jurisprudence in the interest of stare decisis. Due to the inherently draconian consequences of foreclosure and for other reasons, we should, and we do, require strict compliance by the plaintiff in any foreclosure action, and we can do so in keeping with longstanding precedent.

[¶30] In the present case, assuming any transfer of legal title to the mortgage was necessary for U.S. Bank to prove that it was the "mortgagee," 14 M.R.S. § 6321, I would hold that MERS's assignment of its interest in the mortgage—which included legal title to the mortgage, *see Saunders*, 2010 ME 79, ¶ 10, 2 A.3d 289—was sufficient to accomplish this result.

---

[4] For example, the abrogation of the equitable trust doctrine in this context calls into question how the owner of the mortgage note can obtain legal title to the mortgage if the holder of legal title either refuses or is unable to transfer title. Actions to quiet title or for declaratory judgment have been used primarily to establish the existing state of title rather than to compel a transfer of title. *See Welch v. State*, 2004 ME 84, ¶ 6, 853 A.2d 214 ("A quiet title action asks only that a court decide the relative rights of [the parties] . . . ."). *See generally* 14 M.R.S. §§ 5953 (giving courts authority "to declare rights, status and other legal relations whether or not further relief is or could be claimed"), 6651 (describing the nature of a quiet title action) (2018). The equitable trust remedy has been the basis for compelling transfer of title. *See Averill v. Cone*, 129 Me. 9, 11-12, 149 A. 297, 299 (1930).

Frank D'Alessandro, Esq., Maine Equal Justice, Augusta, for appellant Jim A. Gordon

Morgan T. Nickerson, Esq., K&L Gates LLP, Boston, Massachusetts, for appellee U.S. Bank, N.A.

Lewiston District Court docket number RE-2016-189
FOR CLERK REFERENCE ONLY