2006 ME 106

**LDC GENERAL CONTRACTING**

v.

**James LeBLANC.**

Supreme Judicial Court of Maine.

Argued: May 10, 2006.
Decided: Aug. 29, 2006.

Philip P. Mancini, Esq., Benjamin P. Campo Jr., Esq. (orally), Drummond & Drummond, LLP, Portland, for plaintiff.

James M. Bowie, Esq. (orally), Thompson & Bowie, LLP, Portland, for defendant.

Panel: SAUFLEY, C.J., and DANA, ALEXANDER, CALKINS, and SILVER, JJ.

DANA, J.

[¶ 1] James LeBlanc appeals from a judgment entered in the Superior Court (York County, *Brennan, J.*) following a bench trial finding him liable to his former employer, LDC General Contracting, for $38,124.78 plus interest. LeBlanc argues that the court erred in admitting certain documentary evidence in violation of M.R. Evid. 803, 1002, and 1006.[1] We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] LDC, a California-based commercial contractor with an office in Springvale, Maine, hired LeBlanc in 1999. LeBlanc was initially employed as a superintendent but, in March 2001, became a project manager and was given an American Express card and the use of LDC's charge accounts. After LeBlanc left its employ in October 2003, LDC commenced this action claiming that he had made over $50,000 in inappropriate personal charges to various projects for which LeBlanc had served as LDC's project manager.

[¶ 3] Throughout discovery, LeBlanc's counsel requested access to all of the "back-up materials for [LDC's] claims." Prior to trial, he warned LDC's counsel that without having seen all of the originals, he would "object to only portions of those documents being put into evidence" at trial. As the trial commenced, LeBlanc reasserted his objections to the admission into evidence of copies of annotated copies of portions of original invoices when he had not been provided with an opportunity to review the original records. Further, after an LDC employee testified that he had prepared the claim based upon a review of project records that had been requested but had not been produced and were not present in court, LeBlanc objected on the additional ground of hearsay.

[¶ 4] Lawrence D. Camire, the president and owner of LDC, testified that after

---

1. LeBlanc additionally argues that the court erred in finding in favor of LDC with respect to certain charges. Due to our disposition of the evidentiary issues, we need not address these additional arguments.

LeBlanc's resignation, he asked Christopher N. LaRose, another project manager and his nephew, to review all of LeBlanc's credit card charges. LaRose created a timeline from LDC's project files and accounting records, depicting all of LDC's jobs from 2001 through 2003. LaRose then evaluated each of LeBlanc's charges by determining whether it (1) could be associated with one of LDC's jobs, based on the timeline, and (2) was of a type that would have been allowed pursuant to LDC's policies. LaRose compiled several lists of what he determined to be approximately $50,000 of unauthorized charges.

[¶ 5] LDC commenced the instant action against LeBlanc alleging money owed, unjust enrichment, conversion, and fraud and seeking punitive damages. At the bench trial, LeBlanc was represented by an attorney but did not personally appear. LDC offered Exhibits 1, 2, 3, and 5, which consisted of: (1) copies of statements and invoices from American Express, Corriveau–Routhier, NationsRent, and Home Depot,[2] containing LeBlanc's charges from May 2001 through December 2003, with the allegedly unauthorized charges highlighted; and (2) summary pages, listing only the highlighted amounts. LeBlanc's attorney objected to the exhibits' admission, citing M.R. Evid. 803, 1002, and 1006. The court received the exhibits *de bene*, deferring a ruling on their admissibility. In its final judgment, without explanation, the court summarily overruled the Rule 1002 and 1006 objections. It made no ruling on the hearsay objection. The court ultimately held LeBlanc liable for $38,124.78 in unauthorized charges. LeBlanc brought this appeal.

---

**2.** LeBlanc objected that neither the original invoices nor the copies he had annotated were offered or present in court.

## II. DISCUSSION

### A. M.R. Evid. 1002

[¶ 6] LeBlanc argues that, because LDC did not produce the original American Express statements, the admission of Exhibit 1 violated M.R. Evid. 1002.

[¶ 7] M.R. Evid. 1002, the best evidence rule, provides that "[t]o prove the content of a writing, . . . the original writing . . . is required, except as otherwise provided in these rules or by statute." M.R. Evid. 1004 carves out exceptions to the best evidence rule, providing that the original is not required if it: (1) was lost or destroyed, absent bad faith; (2) is unobtainable; (3) is in the control of the party against whom the document is offered; or (4) relates to a collateral matter.

[¶ 8] "It is within the discretion of the trial judge to decide whether an exception to the best evidence rule applies in a given instance. His decision is reviewable only for an abuse of that discretion." *Graybar Elec. Co. v. Sawyer*, 485 A.2d 1384, 1387 (Me.1985) (allowing the admission of a copy where the trial court could have concluded that one of the exceptions applied); *accord State v. Hager*, 691 A.2d 1191, 1194 (Me.1996) (allowing the admission of copies where the originals "were in the possession of a third party outside the State of Maine"). Any deviation from the best evidence rule is harmless error, unless an actual dispute exists as to the terms of the document at issue. *State v. Navarro*, 621 A.2d 408, 411–12 (Me.1993).

[¶ 9] It is undisputed that when the original American Express statements were received by LDC in California, copies of the pages containing LeBlanc's charges were routinely sent to him in Maine for his

annotations that the company would then use to charge the appropriate project. Exhibit 1 purports to be a copy of those portions of LDC's American Express statements that had been annotated by LeBlanc to indicate the nature of each charge (e.g., "gas," "office," or "food"). LaRose copied the annotated copy and highlighted the charges that he deemed unauthorized. Arguably then, there were two "originals": the original American Express bills and the copy of a portion of those bills that LeBlanc had annotated. LDC neither produced nor adequately explained the absence of either original. LDC did not suggest that any of the exceptions set forth in M.R. Evid. 1004 applied in this case. Except with respect to an alteration in the copy of the first original, however, LeBlanc failed to identify an actual dispute as to the content of either missing "original." The court's failure to require LDC to produce the originals may, therefore, have been harmless error.

**B. M.R. Evid. 1006**

[¶ 10] LeBlanc additionally argues that, because LDC did not produce the job files and Quicken book entries underlying Exhibits 1, 2, 3, and 5, the admission of those exhibits violated M.R. Evid. 1006.

[¶ 11] M.R. Evid. 1006 provides:

The contents of voluminous writings ... which cannot conveniently be examined in court may be presented in the form of a ... summary .... The originals shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

We review evidentiary rulings for abuse of discretion or clear error. *State v. Reese,* 2005 ME 87, ¶ 9, 877 A.2d 1090, 1092.

[¶ 12] Exhibit 5 is a subset of Exhibit 1 dealing with groceries and fuel. The summary pages of Exhibits 1, 2, and 3 are essentially organized adding machine tapes of those expenditures highlighted on the attachments that LDC was asserting were inappropriate (no matter when occurred i.e., hotel room in the Caribbean) or inappropriate because the LDC project files and accounting records revealed that no project over which LeBlanc had responsibility was operational at the time. LaRose, who had been a job superintendent for LDC since 1995 and a project manager during the last ten months of LeBlanc's employ, relied primarily upon the individual project files and accounting records to make his assessments. During much of the period in question, the witness, LaRose, was not working for LDC and was therefore relying upon the project files and accounting records to make his assessments. It was these records that LeBlanc had been requesting access to for months and threatening to object to if any summary analysis was offered without such access. Although the underlying records were informally requested fourteen months before trial (and, in any event, M.R. Evid. 1006 mandates that they be made available, even if not explicitly requested), they were never produced.

[¶ 13] In admitting Exhibits 1, 2, 3, and 5, the court exceeded the bounds of its discretion. Inasmuch as a review of the underlying records was essential for LeBlanc's attorney to cross-examine LaRose effectively, the error was not harmless.

**C. M.R. Evid. 803(6)**

[¶ 14] LDC argues that, regardless of the outcome of the analysis of M.R. Evid. 1002 and 1006, Exhibits 1, 2, 3, and 5 were admissible under M.R. Evid. 803(6).

[¶ 15] M.R. Evid. 803(6) provides that, although a document may be hearsay, it is nevertheless admissible if it is a business

record. The party offering a document as a business record must establish that:

> (1) the record was made at or near the time of the events reflected in the record by, or from information transmitted by, a person with personal knowledge of the events recorded therein; (2) the record was kept in the course of a regularly conducted business; (3) it was the regular practice of the business to make records of the type involved; and (4) no lack of trustworthiness is indicated from the source of information from which the record was made or the method or circumstances under which the record was prepared.

*Northeast Bank & Trust Co. v. Soley,* 481 A.2d 1123, 1125–26 (Me.1984) (quotation marks omitted).

[¶ 16] While the original invoices and the copies of the invoices that LeBlanc had annotated were unquestionably admissible business records, the copies of the latter that LaRose had highlighted reflecting his judgment as to which charges were inappropriate were not. The highlighting was done long after the events reflected in the records, was not performed in the regular course of business, was not a regular practice of the business, and since LaRose had made his judgments primarily based upon records LDC had failed to produce despite LeBlanc's repeated requests, one could not assume trustworthiness or a clear understanding of the method or circumstances under which the highlighting was performed. In short, the highlighting of the copies of copies of annotated invoices was performed in anticipation of litigation and not in the regular course of LDC's business. Since the summary pages merely set forth and summed the amounts highlighted, they too were not admissible business records.

■ [¶ 17] Neither the summary pages nor the attachments with LaRose's highlighting can be considered admissible business records. In admitting them, the court exceeded the bounds of its discretion and committed clear error. Because LDC's failure to produce the underlying records prevented effective cross-examination, the error was not harmless.

The entry is:

Judgment vacated.