MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2018 ME 121
Docket:        Pen-17-510
Submitted
 On Briefs:    May 31, 2018
Decided:       August 16, 2018

Panel:         ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

M&T BANK

v.

LAWRENCE F. PLAISTED

ALEXANDER, J.

[¶1]  In *Homeward Residential, Inc. v. Gregor*, 2015 ME 108, 122 A.3d 947, a residential mortgage foreclosure case, we addressed issues, also presented in this appeal, of gaps in evidence regarding elements essential to prove the financial institution's claim.   There we observed: "The financial services industry, through the practice of securitization, spawning a byzantine mass of assignments, transfers, and documentation, has made it difficult for subsequent assignees to demonstrate that they have standing to bring foreclosure claims and prove the elements necessary to prevail in a foreclosure action in a manner compliant with the laws governing foreclosure."  *Id*. ¶ 13 (footnote omitted) (citation omitted).  We further observed that reliance on multiple entities that create, assign, process, and service a mortgage loan makes it "difficult or

impossible to acquire necessary records that qualify for admission under the business records exception to the hearsay rule, M.R. Evid. 803(6), in order to prove ownership of the mortgage, proper notice of defaults, and sums due and paid." *Gregor*, 2015 ME 108, ¶ 13, 122 A.3d 947.

[¶2]   Here, where the record indicates that multiple entities were involved in servicing the loan at issue, M&T Bank presented insufficiently authenticated and conflicting evidence as to the sums due and owing on the mortgage loan.  In *Gregor*, we stated: "The law, the rules of evidence, and court processes have not become more complicated in these matters.  Applying established law, however, has become more problematic as courts address the problems the financial services industry has created for itself."  *Id*. ¶ 14 (citing *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶¶ 8-17, 24-27, 96 A.3d 700).

[¶3]   This appeal does not involve a residential mortgage, but the problems of evidence quality, accuracy, and authentication it presents are similar to problems observed in other foreclosure appeals coming before us. To assist the parties and the courts in assessment of the evidence quality, accuracy, and authentication in this and future cases, we use this opinion to suggest some standards that evidence should meet to sufficiently support a

claim in a foreclosure action where several entities have been involved in servicing the loan.

[¶4]   Lawrence F. Plaisted appeals from a judgment of foreclosure entered by the District Court (Bangor, *Mallonee, J.*) in favor of M&T Bank following a nonjury trial on M&T Bank's complaint.  Plaisted challenges the court's determinations that (1) M&T Bank laid a proper foundation for admitting loan servicing records pursuant to the business records exception to the hearsay rule, M.R. Evid. 803(6) (Tower 2017),[1] and (2) M&T Bank proved the amount owed on the note.  We agree with Plaisted's arguments, vacate the judgment, and remand for entry of a judgment in favor of Plaisted.

## I.  CASE HISTORY

[¶5]   The following facts are either undisputed or taken from the judgment, viewed in the light most favorable to M&T Bank, the prevailing party in the trial court.  *See Deutsche Bank Nat'l Tr. Co. v. Eddins*, 2018 ME 47, ¶ 2, 182 A.3d 1241.  On February 8, 2007, Plaisted executed a promissory note in favor of InterBay Funding, LLC, in the principal amount of $478,500.  To secure

---

[1]  Maine Rule of Evidence 803(6) was recently amended to clarify that the proponent of the business record bears the burden of establishing the foundational elements listed in subsections (A)-(D) of Rule 803(6) and that the opponent bears the burden of establishing that the source of information or the method or circumstances of preparation of the record indicate a lack of trustworthiness pursuant to subsection (E).  2018 Me. Rules 09 (effective Aug. 1, 2018).  This amendment is not a substantive change to the Rule and does not affect the present case.  *See* M.R. Evid. 803(6) Advisory Committee Note to 2018 amend.

4

payment on the note, Plaisted executed a mortgage, also in favor of InterBay Funding, on real property in Hampden to be used for business purposes. InterBay Funding executed a document purporting to assign an interest in the mortgage to Bayview Loan Servicing, LLC, and Bayview Loan Servicing executed a document purporting to assign its interest in the mortgage to M&T Bank.

[¶6]  In May 2016, M&T Bank filed a complaint for foreclosure alleging that Plaisted had defaulted by failing to make payments on the note beginning on November 1, 2013.[2]  Plaisted timely answered, and, after mediation proved unsuccessful, the parties proceeded to trial in July 2017.

[¶7]  At trial, the only witness was a litigation manager for Bayview Loan Servicing who testified that Plaisted's loan had two servicers: Bayview Loan Servicing and M&T Bank.

[¶8]  The witness testified about his training and job responsibilities as a litigation manager for Bayview.  He testified that he had been employed by Bayview for four and a half years and that his responsibilities included reviewing the business records for a loan—including the note, mortgage, payment history, and default notices—and attending court proceedings.  The

    [2] The complaint also named CitiBank (South Dakota), N.A. as a party in interest.  CitiBank did not appear before the trial court and is not a participant in this appeal.

litigation manager testified that during his training he "[sat] down with each and every department within Bayview," including the payment processing department, to observe their operations. He described the training as both "classroom" and "hands on." He also testified that he participates in ongoing training to stay current with industry practices.

[¶9] The litigation manager testified about Bayview's recordkeeping system and security practices. He stated that Bayview's electronic servicing platform stores all of the data related to a loan, including digital images of documents and payment information. He testified that payments and disbursements are entered into the system at or near the time of the event and that Bayview relies on these records in its day-to-day operations. He further testified that Bayview's servicing platform is an encrypted recordkeeping system that requires a log-in and password.

[¶10] The litigation manager testified that Bayview has been servicing Plaisted's loan since its origination and claimed that, at some point after Plaisted defaulted, M&T Bank began "subservicing" the loan on behalf of Bayview. He described the relationship between Bayview and M&T Bank as a "component relationship" and a "working relationship." He explained that M&T Bank handles "the front end of the loan," which includes payment processing,

6

while Bayview handles "the back end of the loan," which includes loss mitigation and foreclosure.

[¶11] He testified that M&T Bank uses Bayview's servicing platform. He explained that, on the live platform, Bayview is "able to see . . . when an M&T employee is in the system, updating the system . . . . We can physically interact with an M&T employee through the same system. It's almost as if we work together . . . . We're just not in the same location." He added, however, that M&T Bank does not use Bayview's imaging system for storing loan documents.

[¶12] The Bayview litigation manager claimed to be a custodian of M&T Bank's records but testified that he is not employed by M&T Bank, has never spoken with anyone from M&T Bank, and did not know where M&T Bank is located.[3]

[¶13] The court admitted several exhibits offered by M&T Bank, including a copy of the original promissory note, a copy of the recorded mortgage and the subsequent assignments, and a copy of the notice of default and right to cure. The court also admitted Exhibit E, which consisted of many screenshots of Bayview's servicing platform, purporting to show the payment

---

[3] When asked during voir dire where M&T Bank is located, the litigation manager guessed that the bank is located in Ohio, but, after reviewing mortgage documents, testified that it is located in New York.

history and the amount owed on the loan. Apparently, no single printout or digital record demonstrating the payment history and amounts owed on the loan—the equivalent of a ledger sheet from the days of paper records—was available. The litigation manager testified that, based on his review of Exhibit E, the loan remained in default and that "the amounts set forth in [M&T Bank's] proposed judgment are fully substantiated by Bayview's system of record."

[¶14] The litigation manager was unable to explain certain discrepancies in amounts claimed to be due. For example, a notice of default sent to Plaisted in July 2014 indicated that the loan payoff amount was $509,906.69. A subsequent notice of default sent in September 2015 indicated that the loan payoff amount was $632,618.71. No document, ledger, or digital exhibit tracked the changes in the sums due or the reasons for the changes between July 2014 and September 2015.

[¶15] When asked to explain the $122,712.02 increase over that time, the litigation manager, after engaging in extensive mathematical calculations, was unable to account for $94,627.59 of the increase with any degree of certainty. He stated that it "could have been" for attorney fees and other costs and that "[i]t's all kind of lumped into one amount, so . . . I don't know what the breakdown is." He explained:

> If I were to go line by line with a couple of different colored highlighters, it would take me a couple hours to give you a specific amount. I don't think we have that kind of time today. I have a different department that usually runs these figures for me and can give me a nice clean breakdown for Your Honor and for both lawyers aside. . . . I just—if we were to go line by line with the payment history, we have other departments that can do that that would—produce a document that—that is a little bit more comprehensive to what you are seeking. The document that I was able to find was a payoff up until September of 2015 . . . .

[¶16] When asked why M&T Bank was seeking $604,616.22 in its proposed judgment—$28,000 less than the September 2015 payoff amount— the litigation manager testified that he was "unsure" why the amount in the proposed judgment was less than the amount in the notice of default. The litigation manager was unable to state how much Plaisted had paid on the loan between 2007 and 2013, stating that he would "need some time to add up all the payments." Nevertheless, he testified that he was certain that the total amount owed on the loan as of July 2017 was $600,520.22, plus outstanding fees and costs incurred by counsel for the trial.

[¶17] During closing arguments, M&T Bank conceded that the Bayview litigation manager was unable to explain "mathematically" the differences among the purported payoff amounts but argued that there is no requirement that a payoff amount listed in a notice of default be accurate and further argued that the amount listed in a notice of default has no bearing on the amount

sought in the judgment. M&T Bank argued that Exhibit E and the litigation manager's testimony, confused as it was, established the amount owed. The court asked whether it was M&T Bank's position that "if [the court] were to go through Exhibit E, exhaustively, and add up every transaction, the numbers would correlate with the numbers you've incorporated in your proposed judgment," to which M&T Bank agreed.

[¶18] On August 24, 2017, the court entered a judgment of foreclosure in favor of M&T Bank in the amount of $604,616.22,[4] the same amount as in M&T Bank's proposed judgment. Plaisted filed a motion for further findings of fact and conclusions of law, *see* M.R. Civ. P. 52(b), which the court denied. Plaisted timely filed a notice of appeal. *See* 14 M.R.S. § 1901 (2017); M.R. App. P. 2A, 2B.

---

[4] The court's judgment provided that the following amounts are owed to M&T Bank:

| | | |
|---|---|---|
| a. Principal Balance | $ | 491,172.36 |
| b. Accrued Interest | $ | 74,985.59 |
| (plus interest at a per diem of $54.57) | | |
| c. Pre-acceleration Late Charges | $ | 1,754.61 |
| d. Escrow Advances | $ | 27,834.80 |
| e. Property Inspections | $ | 546.00 |
| g. Market Analysis | $ | 900.00 |
| h. NSF Charges | $ | 20.00 |
| i. Attorney's Fees | $ | 6,125.00 |
| j. Attorney's Costs | $ | 1,277.86 |
| Total | $ | 604,616.22 |

## II.  LEGAL ANALYSIS

[¶19]  Plaisted argues that the court abused its discretion by admitting Exhibit E pursuant to the business records exception to the hearsay rule and erred in concluding that M&T Bank proved the amount owed on the note.[5]  "A trial court's determination regarding whether the necessary factual foundation to admit evidence pursuant to the business records exception has, or has not, been established is reviewed for clear error."  *KeyBank Nat'l Ass'n v. Estate of Quint*, 2017 ME 237, ¶ 13, 176 A.3d 717.

[¶20]  "Business records are hearsay and therefore inadmissible pursuant to M.R. Evid. 802 unless they meet the requirements of the business records exception in M.R. Evid. 803(6)."  *Ocean Communities Fed. Credit Union v. Roberge*, 2016 ME 118, ¶ 9, 144 A.3d 1178.  Rule 803(6) provides that a business record is admissible if

(A) The record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) Making the record was a regular practice of that activity;

---

[5]  Plaisted also challenges the adequacy of the notice of default and right to cure.  Because we conclude that the court erred in determining that the foundational requirements for admitting Exhibit E had been established, we need not address the issue of the adequacy of the notice.

(D) All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11), Rule 902(12) or with a statute permitting certification; and

(E) Neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

[¶21]  A person is a custodian of records "if the custody of the records comes anywhere within the immediate or ultimate purview of his duties." Field & Murray, *Maine Evidence* § 803.6 at 484 (6th ed. 2007).  Likewise, "[a] qualified witness is one who was intimately involved in the daily operation of the business and whose testimony showed the firsthand nature of his knowledge" but who "need not be an employee of the record's creator." *Estate of Quint*, 2017 ME 237, ¶ 15, 176 A.3d 717; *accord HSBC Mortg. Servs., Inc. v. Murphy*, 2011 ME 59, ¶ 10, 19 A.3d 815.

[¶22]  When a business integrates and relies upon the records of another business in that business's day-to-day operations, the presenting witness must have "sufficient knowledge of *both businesses'* regular practices to demonstrate the reliability and trustworthiness of the information."  *Estate of Quint*, 2017 ME 237, ¶ 15, 176 A.3d 717.

[¶23]  A witness for a party seeking to admit integrated business records must demonstrate knowledge that

- the producer of the record at issue employed regular business practices for creating and maintaining the records that were sufficiently accepted by the receiving business to allow reliance on the records by the receiving business;

- the producer of the record at issue employed regular business practices for transmitting them to the receiving business;

- by manual or electronic processes, the receiving business integrated the records into its own records and maintained them through regular business processes;

- the record at issue was, in fact, among the receiving business's own records; and

- the receiving business relied on these records in its day-to-day operations.

*Id.* ¶ 16; *Beneficial Me. Inc. v. Carter*, 2011 ME 77, ¶ 14, 25 A.3d 96.

[¶24] Here, the litigation manager claimed that he was a custodian of records for M&T Bank, but he did not provide any testimony demonstrating that he had firsthand knowledge of M&T Bank's business practices. In fact, he testified that he had never spoken with anyone from M&T Bank and did not know where M&T Bank is located. Although he testified that Bayview and M&T Bank use the same electronic servicing platform, the witness did not demonstrate that he was familiar with M&T Bank's regular business practices for creating and maintaining loan records. *See Carter*, 2011 ME 77, ¶ 14, 25 A.3d 96. Although the litigation manager had the ability to observe the remote actions taken by M&T Bank employees while those employees were

using Bayview's live platform, he did not testify to personal knowledge of the business practices that occurred on site at M&T Bank, such as whether entries into the loan records through the servicing platform are made at or near the time of the events or whether the records are transmitted by a person with personal knowledge of the events. *See id.*; M.R. Evid. 803(6). Without knowledge of M&T Bank's business practices, Bayview's litigation manager was not qualified to lay the foundation necessary to admit the screenshots of the loan's payment history, which integrated records from both businesses.[6] *See Gregor*, 2015 ME 108, ¶ 14 n.11, 122 A.3d 947.

[¶25] Even if M&T Bank had laid a proper foundation for the admission of the screenshots, the conflicting evidence submitted to prove the amount owed—Exhibit E and the testimony of the litigation manager—was inadequate under the circumstances. *See Greenleaf*, 2014 ME 89, ¶¶ 18, 24-27, 96 A.3d 700; *Chase Home Fin. LLC v. Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508 (providing

---

[6] Because M&T Bank was the plaintiff—and Bayview Loan Servicing and M&T Bank maintained a servicer-subservicer relationship—there was nothing preventing M&T Bank from calling a custodian of its own records or attempting to authenticate the exhibit through M.R. Evid. 902(11), which may have satisfied the requirements of the business records exception that are missing here. Rule 902(11) "makes it possible to lay the foundation for domestic business records without the need to call a live witness." *Avis Rent A Car System, LLC v. Burrill*, 2018 ME 81, ¶ 17, --- A.3d --- (quoting Field & Murray, *Maine Evidence* § 902.11 at 554 (6th ed. 2007)).

14

that the amount due on a note is an element of proof to support a judgment of foreclosure).

[¶26]   Described by the litigation manager as a "packet," Exhibit E consisted of sixty-one unnumbered pages of partially redacted screenshots.[7] Review of Exhibit E indicates that it lacks uniformity and appears to be a compilation of data and reports from various sources.[8]  It is far from a ledger sheet or other paper or digital document demonstrating, in one place, balances due, dates and amounts of payments made, and changes in balances due as a

---

[7]  The litigation manager testified that it is Bayview's practice to require its counsel to redact personal information from exhibits submitted to the court.  When business records are offered in evidence, they must be "in the same form as when maintained for business purposes."  Field & Murray, *Maine Evidence* § 803.6 at 488.  In *LDC General Contracting v. LeBlanc*, we stated that otherwise admissible business records were rendered inadmissible where amounts listed in the records had been highlighted because the highlighting took place long after the events reflected in the records, was not performed in the regular course of business, and was not a regular practice of the business, and because the proponent of the exhibit failed to produce the underlying records despite repeated requests by the opposing party.  2006 ME 106, ¶¶ 15-17, 907 A.2d 802.  As in *LeBlanc*, the records here were redacted in anticipation of litigation and not in the regular course of Bayview's business, and therefore were not admissible business records for this reason alone.  The best practice is that, once the admissibility of the unredacted document has been established, the proponent should be prepared to present to the court a copy with redactions of sensitive personal information, such as a Social Security number, that should not be publicly disclosed.  The unredacted copy can then be impounded by the court, allowing the redacted copy to remain part of the public record.

[8]  For example, some pages contained "M&T Bank" or "Bayview Loan Servicing" in the header, whereas others contained no header at all; some pages appeared to contain raw data entries, yet others appeared to be summaries or reports; and the pages that exhibited the M&T Bank header displayed a web address at the bottom, possibly indicating a source external to Bayview's platform. The court could have excluded Exhibit E if the sources of information or other circumstances indicated a lack of trustworthiness even if it otherwise would have been admissible.  *See* M.R. Evid 803(6)(E); *Adamatic v. Progressive Baking Co.*, 667 A.2d 871, 874-75 (Me. 1995).

result of accumulation of interest, late payment fees, and other charges allowed by the loan documents.

[¶27] The litigation manager offered insufficient testimony to explain the contents of Exhibit E and the process for generating its contents, leaving it to the court to sift through numerous pages and large amounts of data, frequently displayed using abbreviations and code, to determine whether the evidence supported the amount claimed in M&T Bank's proposed foreclosure judgment. In effect, M&T Bank gave the court, as Exhibit E, a large pile of paper, urged the court to sift through the pile, and argued that the amount it claimed to be due could be found somewhere in the pile.

[¶28] Exhibits, such as the one offered here, should be published to the fact-finder "in a way that will generate the most appreciation for the exhibit and its significance." Murray, *Basic Trial Advocacy* 304 (1995). "[T]he most powerful means of publication of an exhibit is with the aid of a witness" who has the ability to point out its features and "discuss its contents as a part of the fact presentation." *Id.* at 307. In a foreclosure action, the party seeking a judgment of foreclosure should present testimony and documentary evidence establishing, with specificity, how that party calculated the total amount owed on the note, which in most cases will require a demonstration of the loan

payment history, an itemized list of other charged amounts, and an indication of changes in the sums due on the loan.

[¶29]  Regarding the loan payment history, a party seeking a judgment of foreclosure should submit evidence identifying the following information: the original amount of the loan; the date the debt was incurred; the schedule and due dates for payments; the dates and amounts of each payment, including any payments made after default; the dates and amounts of each charge assessed (interest, escrow payments, costs, fees, and other charges); the balance due on the note after each payment and charge assessed; the date of the last payment before default; the total amount paid by the mortgagor; and, if the loan was serviced by more than one loan servicer, the time during which each servicer was responsible for collecting and recording loan payments and charges. Preferably, this information should be presented in chronological order.

[¶30]  The evidence must be presented through the testimony of a witness, or a witness supported by an affidavit that qualifies for admission under M.R. Evid. 803(6), unless the evidence is admitted by stipulation or through an admission obtained during the discovery process pursuant to M.R. Civ. P. 36.  In this case, although the litigation manager testified to some of these

items, primarily during cross-examination, ascertaining this information was primarily left to the court.[9]

[¶31] As the party bearing the burden of proof, it was M&T Bank's duty to prove the amount owed by presenting evidence of the information described above in a form that was both accessible and admissible. *See Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508; *see also Warner v. Warner*, 2002 ME 156, ¶ 21 n.10, 807 A.2d 607 (providing that, when a party fails to adequately organize the presentation of evidence of complicated and lengthy financial transactions, the court may require the party to submit illustrative aids, summary exhibits, and other testimonial aids so as to make the interrogation and presentation of evidence effective for the ascertainment of the truth).[10] Because M&T Bank failed to meet its burden, we vacate the judgment.

---

[9] Because it appears that the litigation manager did not closely inspect Exhibit E at trial, the record is unclear whether the litigation manager's testimony regarding the payment and servicing history was supported by the documentary evidence. For example, the litigation manager testified that Plaisted's last payment was made to Bayview on November 4, 2013. No evidence was presented regarding when Bayview transferred loan servicing responsibilities to M&T Bank, but the litigation manager testified that Plaisted went into default before M&T Bank took over servicing the loan and that Plaisted made no payments to M&T Bank. The loan servicing history buried in Exhibit E appears to demonstrate, however, that Bayview ceased servicing the loan on March 1, 2011, and that M&T Bank began servicing at that time, receiving payments for more than two-and-a-half years. Because of the limited testimony regarding the contents of Exhibit E, the trial court was deprived of the opportunity to weigh this potentially conflicting or inconsistent evidence. *See State v. True*, 2017 ME 2, ¶ 19, 153 A.3d 106 (stating that "the weighing of conflicting or inconsistent evidence . . . falls solidly within the province of the . . . fact-finder").

[10] Caution must be exercised when using computerized business records pursuant to M.R. Evid. 616 and 1006. *See, e.g.*, *LeBlanc*, 2006 ME 106, ¶¶ 10-13, 907 A.2d 802; *United Air Lines, Inc. v. Hewins Travel Consultants, Inc.*, 622 A.2d 1163, 1167-68 (Me. 1993); *Cives Corp. v. Callier Steel Pipe*

The entry is:

> Judgment vacated. Remanded for entry of a judgment in favor of Lawrence F. Plaisted.

---

Patrick E. Hunt, Esq., Patrick E. Hunt, P.A., Island Falls, for appellant Lawrence F. Plaisted

Andrew J. Schaefer, Esq., Bendett & McHugh, P.C., Portland, for appellee M&T Bank

Bangor District Court docket number RE-2016-71
FOR CLERK REFERENCE ONLY

---

*& Tube, Inc.*, 482 A.2d 852, 859 (Me. 1984); *Ne. Bank & Tr. Co. v. Soley*, 481 A.2d 1123, 1127-28 (Me. 1984); *see also* Field & Murray, *Maine Evidence* §§ 616, 803(6)(a), 1006; Ashley S. Lipson, *Art of Advocacy: Demonstrative Evidence* §§ 16.01-.05, -.08 (2018), LexisNexis; *see generally* 16 M.R.S. § 456-A (2017).