STATE OF MAINE
AROOSTOOK, SS

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CARSC-RE-16-34

TD BANK, N.A., f/k/a First Massachusetts )
Bank, N.A., )
)
                       Plaintiff, )
v. )
)
)
TERRY CORMIER and JODINA )
CORMIER, )
)
                  Defendants. )

**ORDER AND JUDGMENT OF
FORECLOSURE AND SALE**

<u>**Title of Real Estate is Involved**</u>

**Title 83 Pine Street, Presque Isle, Maine 04769, is Involved
Mortgage recorded in the South Aroostook County Registry of Deeds at Bk. 3550, Pg. 118**

Following a trial on this matter on July 6, 2018, at which Defendants, Terry Cormier and

Jodina Cormier (together, "***Defendants***") appeared with counsel, and after review of the

pleadings, Affidavits, and admitted evidence at trial, the Court finds pursuant to M.R. Civ. P.

54(b) and case law as follows:

1.      That the record indicates the following parties and counsel of record:

<u>PARTY</u>

<u>COUNSEL</u>

Plaintiff:    TD Bank, N.A.
               One Portland Square
               Portland, ME 04101

Stephanie A. Williams, Esq.
Duane Morris, LLP
Two Monument Square, Suite 505
Portland, ME 04101

Defendants:  Terry Cormier
               83 Pine Street
               Presque Isle, ME 04769

Eugene J. McLaughlin, Esq.
McLaughlin Law Office
P.O. Box 1631
Presque Isle, ME 04769

               Jodina Cormier
               83 Pine Street
               Presque Isle, ME 04769

Eugene J. McLaughlin, Esq.
McLaughlin Law Office
P.O. Box 1631
Presque Isle, ME 04769

2.	That all parties received notice of the proceedings in this action and that the notice was given in accordance with the applicable provisions of the Maine Rules of Civil Procedure;

3.	That venue is properly laid in this Court;

4.	That the Defendants appeared in this action, mediation occurred and did not resolve the case;

5.	That Plaintiff is entitled to judgment as a matter of law;

6.	That Defendants are in default under the terms of a certain Note, dated August 22, 2001, in the original principal amount of $57,000.00 (the "*Note*"), and the Defendants received proper notice of said default pursuant to 14 M.R.S. § 6111;

7.	That Plaintiff holds a Mortgage on real estate located 83 Pine Street, Presque Isle, Maine, 04769, to secure the Note, which Mortgage is recorded in the South Aroostook County Registry of Deeds in Book 3550, Page 118 (the "*Mortgage*"), the legal description of the mortgaged property contained in said Mortgage is incorporated by reference;

8.	That unless otherwise noted, as of July 6, 2018, the following amounts are owed to the Plaintiff under the terms of the Note and Mortgage:

| | | |
|---|---|---|
| a. | principal balance: | $47,201.33 |
| b. | accrued interest: | $11,463.05 |
| c. | late charges (through January 24, 2016): | $163.70 |
| d. | appraisal fees: | $856.00 |
| e. | inspection fees: | $449.32 |
| f. | escrow deficit: | $10,084.90 |
| g. | expense advances: | $505.00 |
| h. | attorneys' fees and costs (through January 31, 2017): | $10,656.04 |

SUBTOTAL: $81,379.34

i.	additional reasonable attorneys' fees and expenses incurred by Plaintiff in preparing for trial; drafting a letter regarding the period of redemption; obtaining and recording a Clerk's Certification regarding appeal; obtaining and enforcing a Writ of Possession; preparing and conducting the foreclosure sale; filing and supporting a Report of Sale; in obtaining relief from stay and/or any other bankruptcy relief in any subsequent

proceeding in U.S. Bankruptcy Court; and in pursuing and collection of any deficiency judgment to the extent it is not discharged in bankruptcy;

j.       additional interest accruing on said principal from and including July 7, 2018 at the rate of $9.3756 per day, which is 7.250% per annum; and

k.       any amounts advanced by Plaintiff to protect its mortgage security.

9.       The order or priority of the parties who have appeared in this action (and have not been defaulted), based on the order of recording, is as follows:

*First*:  Plaintiff – $81,379.34 plus accrued interest at the Note rate of $9.3756 per day from and including July 7, 2018, to the date of entry of judgment, plus interest after judgment at the 7.76% (the appropriate rate pursuant to 14 M.R.S. § 1602-C because the Note rate is less than 7.76%, the weekly average one-year United States Treasury bill rate as published by the Board of Governors of the Federal Reserve System for the last full week of 2017 plus 6%); and

*Second*:  Defendants – any excess proceeds from sale, pursuant to 14 M.R.S. § 6324.

10.      That Plaintiff's claim for attorneys' fees is integral to the relief sought, within the meaning of M.R. Civ. P. 54(b)(2);

11.      That there is no just reason for delay in the entry of final judgment for Plaintiff on all claims, except for the claim for attorneys' fees incurred by Plaintiff after January 31, 2017, for the following reasons:

a.       If judgment is granted but not entered as final, the time periods set forth in 14 M.R.S. §§ 6322 and 6323 will commence even though the judgment is subject to later revision and Plaintiff and any bidders at the foreclosure sale would be exposed to some risk in proceeding to close a sale if judgment is not final and remains subject to revision; and

3

b.    Any dispute regarding attorneys' fees incurred by Plaintiff after January 31, 2017 may be resolved by Defendants filing a motion contesting Plaintiff's Report of Public Sale as provided in 14 M.R.S. § 6324.

WHEREFORE, it is hereby ORDERED, ADJUDGED, and DECREED:

(a)    That if Defendants, its heirs or assigns, do not pay Plaintiff the amounts adjudged to be due to Plaintiff in Paragraph 8 above within ninety (90) days from the date of entry of this Order, Plaintiff (through its agents or attorneys) shall, unless it elects to allow the Defendants to cure and reinstate, proceeds with a sale of the real estate described in the Mortgage recorded in the South Aroostook County Registry of Deeds in Book 3550, Page 118, pursuant to 14 M.R.S. §§ 6321-6324, free and clear of all liens except liens senior to Plaintiff's Mortgage, and shall pay the proceeds of the sale, after satisfying expenses of sale, in the priority order and amounts set forth in Paragraph 9 above;

(b)    That the Clerk is hereby directed to enter this Order and Judgment of Foreclosure and Sale as a final judgment pursuant to M.R. Civ. R. 54(b)(1) except as to attorneys' fees incurred after January 31, 2017;

(c)    That if Defendants fails to redeem by paying the amounts adjudged to be due in Paragraph 8 on or before ninety (90) days from the entry of this Order (or cure and reinstate within such additional time as Plaintiff in its sole discretion allows), or if Defendants abandons the mortgaged property, Plaintiff shall then be entitled, at its option, without further hearing to take exclusive possession of the real estate described in Plaintiff's Mortgage, and a Writ of Possession shall then issue upon Plaintiff's request;

(d)    That an execution shall issue against Defendants for the deficiency amount at Plaintiff's request;

4

(e)     That Plaintiff shall specify attorneys' fees incurred after January 31, 2017 in its Report of Public Sale, which shall then constitute a timely application for an award of additional attorneys' fees, notwithstanding the requirements of M.R. Civ. P. 54(b)(3) to file such an application within sixty (60) days after judgment; Defendant may contest the Report of Public Sale and request for additional attorneys' fees by filing a motion pursuant to 14 M.R.S. § 6324;

(f)     That once the applicable appeal period has expired, Plaintiff shall prepare and the Clerk shall execute an appropriate certification either that no action was taken or than an appeal was filed, and Plaintiff shall then record the said certification and a copy of this Judgment in the Registry of Deeds for Southern Aroostook County and pay the recording fees, in compliance with 14 M.R.S. § 2401(3), such fees and costs so incurred by Plaintiff will be added to and become part of the Mortgage indebtedness secured by the Mortgage;

(g) That the court's Detailed Findings, Decision and Order Regarding Plaintiff's Complaint for Foreclosure are incorporated herein; and

(h)     That the Clerk shall enter the following on the docket:

"Order and Judgment of Foreclosure and Sale entered for Plaintiff as a final judgment except for attorneys' fees incurred after January 31, 2017, with the court's Detailed Findings, Decision and Order Regarding Plaintiff's Complaint for Foreclosure of even date incorporated herein. Said Order is incorporated in the docket by reference. The entry is made in accordance with M.R. Civ. P. 79(a) at the specific direction of the Court.

Dated at _____, Maine, this ____ day of _____, 2018.

_____
Justice, Maine Superior Court

5

Date Order entered on the Court's Docket: _____

Appeal Certification: I certify that the appeal period expired on _____, without the filing

of an appeal.

Attest:

_____

Clerk, Aroostook Superior Court

STATE OF MAINE
AROOSTOOK, SS.

MAINE SUPERIOR COURT
LOCATION: CARIBOU
CIVIL ACTION
DOCKET NO: CARSC-RE-16-34

TD BANK, N.A. f/k/a
  First Massachusetts Bank,

                **Plaintiff**

                **VS.**

TERRY CORMIER and
  JODINA CORMIER

                **Defendants**

DETAILED
FINDINGS, DECISION
AND ORDER
REGARDING
PLAINTIFF'S COMPLAINT
FOR FORECLOSURE

**TITLE TO REAL ESTATE IS INVOLVED**
**83 Pine Street, Presque Isle, Maine**
**Mortgage recorded at SDARD Bk. 3550, pg.118**

On or about March 24, 2016 TD Bank (hereafter Bank) filed a civil complaint against Terry

Cormier and Jodina Cormier (hereafter Defendants) seeking foreclosure of mortgage pursuant to

14 M.R.S. §6322 regarding property at 83 Pine Street, Presque Isle, Maine. Defendants timely

filed an answer to the complaint. Mediation was held on November 18, 2016 but the matter was

unresolved. Trial on the matter was held July 6, 2018

1

At trial the Bank proffered William Baker as its witness qualified to testify about the business records of the various entities involved. M.R.Evid.803(6); *Beneficial Maine v. Carter*, 2011 ME 77, *Key Bank Nat'l Ass'n v. Estate of Quint*, 2017 ME 237. [1] At trial the Bank offered the following exhibits which were admitted:

A. Copy of Promissory Note dated August 22, 2001 from Defendants to Lender, First Massachusetts Bank, N.A.,

B. Copy of Mortgage dated August 22, 2001 from Defendants to First Massachusetts Bank N.A. regarding property at 83 Pine Street, Presque Isle, Maine and recorded at SDARD Bk. 3550, p. 118;

C. Copy of Certificate of Assistant Corporate Secretary of TD Bank, National Association, with supporting documents, certifying that First Massachusetts Bank, NA merged with and into Peoples Heritage Bank, N.A. and that its name was subsequently changed to Banknorth, National Association, then to TD Banknorth, National Association, and finally changed to TD Bank, National Association[2];

D. Trial Modification Letter from Bank to the Defendants dated July 16, 2014 and signed by Defendants on July 23, 2014;

E. Loan Modification and Amendment Agreement effective October 1, 2014, signed by Defendants November 21, 2014 and signed by Sherry Giles on behalf of the Bank on

---

[1] Based on his experience and training with the bank, his direct knowledge of the Bank's operations, record keeping and software systems, the Court finds Mr. Baker to be a qualified witness.

[2] At trial the court inspected the original note, mortgage and certificate, and compared them to Exhibits A, B and C. The proposed exhibits were each found to be accurate copies of the originals. After inspection, the originals were returned to Bank's counsel.

2

December 10, 2014;

F1.Short Payment Letter dated December 24, 2014;

F2. Short Payment Letter dated May 20, 2015;

G1. Payment History;

G2. Payment History Code Definitions;

H. Notice of Right to Cure Default Letter dated July 16, 2015 issued by TD Bank;

I. Notice of Right to Cure Default Letters to each Terry Cormier and Jodina Cormier dated

December 17, 2015 issued by DuaneMorris, Bank's counsel;

J. Reinstatement Itemization and Verification through December 17, 2015;

and

K. Payoff Itemization through July 6, 2018.

Also admitted into evidence was the Affidavit of Counsel Stephanie Williams dated July 3, 2018 itemizing attorney fees.

In addition, at trial both Defendants testified and the following Defense Exhibits were admitted:

1. Loan payment receipts dated January 16, February 17, March 16, April 17, May 18, and June 15, 2015 each in the amount of $410, except for the receipt dated January 16 which was in the amount of $409.40;

2. Letter from Bank to Defendants dated April 28, 2015 in response to their CFPB complaint;

3. Letter from Bank to Defendants dated May 14, 2015 in response to complaint;

4. Payment History; and

5. Letter from Defendants to State of Maine, Department of Professional and Financial

Regulation detailing their complaint with the Bank.

At the conclusion of the proceedings the evidence was closed and the Court set a briefing schedule for parties' counsel to submit written arguments. The court has received and reviewed written arguments from Plaintiff dated August 8, and September 20, 2018 and from the Defendant dated September 12, 2018.

## DISCUSSION

For a judgment of foreclosure to be granted, there are eight required elements:

- the existence of the mortgage, including the book and page number of the mortgage, and an adequate description of the mortgaged premises, including the street address, if any;

- properly presented proof of ownership of the mortgage note and [evidence of the mortgage note and] the mortgage, including all assignments and endorsements of the note and the mortgage;

- a breach of condition in the mortgage;

- the amount due on the mortgage note, including any reasonable attorney fees and court costs;

- the order of priority and any amounts that may be due to other parties in interest, including any public utility easements;

• evidence of properly served notice of default and mortgagor's right to cure in compliance with statutory requirements;

• after January 1, 2010, proof of completed mediation (or waiver or default of mediation), when required, pursuant to the statewide foreclosure mediation program rules; and

• if the homeowner has not appeared in the proceeding, a statement, with a supporting affidavit, of whether or not the defendant is in military service in accordance with the Servicemembers Civil Relief Act.

*Chase Home Finance LLC v. Higgins,* 2009 ME 136, ¶11.

1.Ownership and Existence of Note and Mortgage

In this case, the Bank has properly presented proof of its actual possession and ownership of the promissory note, and the existence of a mortgage. (See Exhibits A,B and C; *Bank of America, N.A. v. Greenleaf,* 2014 ME 89, ¶21). The Bank is in actual possession of the original promissory note and mortgage to First Massachusetts Bank, N.A. And this is a note and mortgage that has been retained in Bank's portfolio since its inception. Soon after the loan's inception, First Masachusetts Bank, N.A. merged into Peoples Heritage Bank, N.A., and then the Bank had three name changes, to what is now TDBank, National Association. (see Exhibit C).

Before addressing the remaining elements required for foreclosure, the court must make findings relative to the Loan Modification effective October 1, 2014. The original note and mortgage required Defendants to make a monthly payment of $388.84 for principal and interest, plus an additional monthly amount for taxes and insurance, otherwise known as "escrows". (See

Paragraph 3 of p. 5 of the mortgage, Exhibit B). The court notes that the monthly amount for the escrow payment is not specified or fixed as those amounts indeed fluctuate from year to year. Prior to October 2014 Defendants were behind on the mortgage payments and over $4000 behind on the escrows. (See Exhibit D and Defense Exhibit 5).Upon reviewing the payment history, the Defendants started falling behind in their payments in November 2012. (See Exhibit G1). After becoming delinquent the principal balance of the loan remained at $47811.36. In an effort to rectify the delinquency the Bank and Defendants negotiated a loan modification. Most of Defendants' discussions and correspondence regarding loan modification were with Sherry Giles who worked in the loan modification department of the Bank.

On July 16, 2014, the Bank offered Defendants a trial loan modification, which Defendants accepted. (See Exhibit D). The terms of the trial modification required Defendants to pay three consecutive monthly payments of $678.56 on August 1, September1 and October 1, 2014, and were also to pay the negative escrow balance of $4129.20. Id. Defendants made those three payments plus an additional fourth payment of the same amount on November 14, 2014 for the November 2014 payment. (See Exhibit G1). The court notes that the monthly amount of $678 is consistent with the monthly payments being made for principal, interest and escrows prior to getting behind. (See Exhibit G1). In its offer letter the Bank advised the Defendants that upon timely completion of the trial period payments it would re-amortize the loan balance $47811.36 at the same interest rate of 7.25% over 203 months. (Exhibit D).

The monthly payments in the trial period being timely being made, the Bank forwarded to Defendants a permanent Loan Modification and Amendment Agreement, to be effective October

1, 2014. (Exhibit E). The new payment for principal and interest on the loan balance of $47,811.36 at a rate of 7.25% was set at $409.40 per month, with the first payment due November 1, 2014. (See Paragraph 2 of Exhibit E). Due to some delay in getting the document to Defendants, the Defendants did not sign it until November 21, 2014 but the Defendants fourth payment of $678.56 went to the November payment. In addition, the permanent Loan Modification and Amendment Agreement stated that Borrowers (Defendants) were required to comply with the requirements of the mortgage to pay taxes, insurance and escrow items. (See Paragraph 4 of Exhibit E).

As previously indicated, the Trial Loan Modification Letter indicated the Defendants were also to pay $4129.20 to be applied to the negative escrow. That amount was not paid. But a review of the payment history indicates the first three payments of $678.56, essentially the three trial payments, were applied to the negative escrow. (See Exhibit G1). The fourth payment went to the November payment pursuant to the permanent Loan Modification, and with it a principal reduction was realized. (See Exhibit G1).

After entering the Loan Modification, all payments made by the Defendants were in the $410 range. Defendants testified that upon entering the permanent Loan Modification they understood from their discussions with Sherry Giles that they would only be paying a monthly amount for principal and interest, and they were no longer required to pay escrows. (See also Defendant's Exhibit 5).

7

The first payment due after signing the Loan Modification was for December, which Defendants made but only in the amount of $410. The Bank promptly sent Defendants a "short letter" dated December 24, 2014, advising them their payment was insufficient for the full amount due and that their new payment was $656.56. (See Exhibit F1). Defendants testified they contacted Sherry Giles to inquire why they were now being required to pay escrows, and she supposedly told then she "..would take care of it." In the subsequent months Defendants continued paying only $410. They testified they made contact with Sherry Giles on several occasions and each time she told them she would take care of it, but then eventually she stopped taking their calls.

Defendants are asking the court to find that the Loan Modification required them to make monthly payments for only principal and interest, and that they were no longer required to pay escrows. The court declines to make such a finding. As previously discussed, the payments required during the trial period were for an amount that represented principal and interest, plus an amount for escrows. As suggested by its name, the trial payment plan was to test whether the Defendants could consistently make the required payments after a lengthy period of falling behind and no payments. Successful with the three trial payments, the Bank offered Defendants the permanent Loan Modification and Amendment Agreement. That document clearly states that Defendants are to comply with all other requirements of the mortgage regarding payment of taxes, insurance, escrows and the like. Given that the Defendants were so arrears in their escrow payments, it is improbable that a lender in the Bank's position would waive the escrow requirement. In summary, the Bank has proven by a preponderance of the evidence the monthly payment due pursuant to the Loan Modification was to include escrows.[3] (See Exhibit G1).

---

[3] The court notes that Defendants asserted that Ms. Giles agreed to waive escrows, yet despite

8

2.Breach

Whether there was a breach is focused on the payment history after the permanent Loan Modification and Amendment Agreement was executed in November 2014. The Payment History does show that after entering the Loan Modification, five payments in the amount of $410 were made.[4] These payments were not sufficient to pay the escrow items as required by the mortgage and Loan Modification. (Exhibits B and E). As the payments being made were insufficient to cover the total monthly amount due, Mr. Baker explained that the payments were held, and when sufficient funds had accumulated they were applied to the monthly amount due. As the five payments of $410 were received over the period of December 2014 through June 2015, they were ultimately applied to the amounts due for principal, interest and escrows for December, 2014 and January, February and March 2015. (See Exhibit G1 and Defendants' Exhibit 1). Although the Bank sent to Defendants "short letters" dated December 24, 2014 and May 20, 2015 in which it indicated their payments were insufficient to cover the amount due, particularly escrows, the Defendants never increased their payments above $410. The court finds that the Bank has proven by a preponderance of the evidence that the last payment made and credited was the payment due for March 2015, and further finds Defendants are in default of the mortgage and owe on the note for as of the April 2015 payment.

---

being still employed by the Bank and subject to a subpoena, she was not called to testify. Also, during trial reference was made to collection activity reports in which entries are made recording all communications made with customers. This report was not introduced into evidence, although Bank's counsel represented to the court that there were no entries in the report supporting the Defendants' assertion that Ms. Giles had agreed to waive escrows. In response to the court's inquiry, Defendants' counsel indicated a document request for the report was never made. The court did not rely on this information in making its finding, but merely points it out for informational purposes.

[4] A sixth payment was also made but returned.

3.Amount Due

As previously discussed, Defendants owe on the note as of the April 2015 payment. After applying the March 2015 payment, the last payment made, the principal balance on the note is $47201.33. (See Exhibit G1). In addition, Exhibit K was admitted as a summary of the amounts due as of July 6, 2018 for principal, interest, late charges, escrows and other fees and expenses. Mr. Baker provided testimony establishing the foundation of Exhibit K. Regarding the fee and expense detail, Mr. Baker could not identify what comprised the deferred amounts listed as $6484.30 and therefore that amount is disallowed. All other amounts listed in Exhibit K are consistent with the Payment History, Exhibit G 1, and are found to be reliable and trustworthy. Accordingly, the itemization of the amounts due are:

Principal- $47201.33;

Interest- $11, 463.05;

Late Charges- $163.70;

Escrow- $10,084.90;

Fees &Expenses- $1,810.32

TOTAL- $70,723.30

In addition, the Affidavit of Counsel Stephanie A. Williams indicates the Bank has incurred $10,656.04 in fees and disbursements, which amounts are supported by the itemization in the affidavit. See *HSBC Bank USA, N.A. v. Gabay*, 2011 ME 101, ¶ 27. The court finds that the Bank has proven by a preponderance of the evidence that the total amount due on the mortgage is $81,379.34.

4.Order of Priority and Amount Due Other Parties- not applicable.

5.Notice of Default

At trial the Bank introduced the Notice of Right to Cure sent by DuaneMorris, as counsel for the Bank to the Defendants dated December 17, 2015[5] (Exhibit I). The notice was sent with a certificate of mailing to both the Defendants, Terry Cormier and Jodina Cormier to their address at 83 Pine Street in Presque Isle, Maine. Mr. Baker provided testimony regarding the issuance and service of the notice, explaining that although the document was prepared by Bank's counsel, he was familiar with the document as it was prepared using data and figures the Bank provided, and the document was reviewed, edited and approved by Bank personnel before the letter was mailed by counsel. See *Deutsche Bank National Trust Company v. Eddins*, 2018 ME 47. Although Mr. Baker was qualified to lay the requisite foundation for the introduction of the Notice of Right to Cure, the content of the notice must still strictly comply with 14 M.R.S.A §611, including an itemization of all past due amounts causing the loan to be in default and an itemization of any other charges that must be paid in order to cure the default. See *JP Morgan Chase Bank, N.A. v. Lowell*, 2017 ME 32, ¶ 13 and 18.

Defendants point out that two Notice to Cure Default Letters were issued to them. The first, prepared by the Bank and dated July 16, 2015 indicated the amount due was $7314.17 to be paid within 35 days of receipt. The second, prepared by Bank's counsel, DuaneMorris and dated December 17, 2015 indicated the amount due was $8527.65 to be paid by January 24, 2016.

---

[5] Also admitted in evidence as Exhibit H is a Notice of Right to Cure letter dated July 16, 2015 issued by the Bank. The Bank is not relying on this notice for the purpose of the foreclosure.

11

Defendants assert that the two notices are inconsistent with one another and therefore neither are reliable, and that otherwise the notices do not comport with 14 M.R.S.A. §6111. Defendant does not, however, specifically set forth how or why the notice dated December 17, 2015 which the Bank is proceeding upon is wrong, incorrect or non-compliant with §6111. None the less, the court has undertaken the task of closely scrutinizing the notices for compliance, particularly the December 17, 2015 notice.

As stated, the Bank's Complaint for Foreclosure has attached to it the December 17, 2015 Notice of Right to Cure Default, and that is the notice upon which the Bank relies to prove its case. The court will however also discuss the first notice and compare it to the second notice to test their reliability and trustworthiness.

To conduct this analysis, a fact which needs to be determined is what was Defendants' monthly payment after the loan modification agreement was entered. Paragraph 2 of the Loan Modification sets the monthly payment for principal and interest at $409.40, and further states the requirement to comply with the terms of the mortgage regarding payments of escrow items. See Exhibit E. As previously discussed, after entering the loan modification Defendants made payments of only $410 which was insufficient to cover principal, interest and escrows. Hence, the Bank issued Defendants a short letter dated December 24, 2014 indicating they were to remit an additional $223.12 and that their monthly payment was $656.56. Exhibit F1. But Defendants still failed to remit payments sufficient to cover the escrows. Accordingly, the Bank issued Defendants a second short letter dated May 20, 2015. Exhibit F2. In this short letter the Bank

12

instructed the Defendants to remit an additional $330.00 for the escrows and further informed the Defendants that as of March 1, 2015 their monthly payment was $740.00.

After May 20, 2015 the payment history shows Defendants still failed to ever pay more than $410 per month. See Exhibit G1. Combining partial payments, the March 2015 payment was credited as paid in full, with $285.92 applied to interest and $123.48 applied to principal ($409.40 in total for principal and interest, consistent with the Loan Modification) and $330.60 applied to escrows, for a total of $740, consistent with the monthly payment specified in the last Short Letter. See Exhibit G1. Further payments sufficient to cover the total amount of $740.00 for principal, interest and escrows after the payment due after March 2015 were not made.

By letter dated July 16, 2015, the Bank issued Defendants a Notice of Right to Cure informing Defendants they were four payments overdue. In reviewing all of the documents, this is correct as they owed for April, May, June and July. The Notice also itemized the principal and interest at $1637.60, which equals $409.40 per month for four months, and similarly itemized the amount for escrows at $1322. 40, which equals $330.60 for four months. See Exhibit H. Accordingly, the notice sent by the Bank dated July 16, 2015 is mathematically correct with respect to the amounts due for principal, interest and escrows when compared with other documents and payment history.[6]

---

[6] There was no evidence introduced regarding how appraisal fees were calculated, but again, the Bank is not relying on this notice to prove it is entitled to a foreclosure.

13

Still no payments were made by the Defendants. Several months passing, a second Notice of Right to Cure was issued on December 17, 2015. This notice was sent by Bank's counsel, DuaneMorris. See Exhibit I. As previously discussed, this notice was prepared by counsel but with data provided by the Bank, and was reviewed and edited by the Bank prior to issuance. The court feels this is sufficient foundation for the introduction of the document per *Eddins*. But it still must be correct.

Mr. Baker testified that the amounts due as of December 17, 2015 and utilized to prepare the Notice of Right to Cure are as itemized in Exhibit J, which is a document prepared by the Bank on December 16, 2015. Exhibit J itemizes nine monthly amounts due for the months of April 2015 through December 2015. For each month, the amount itemized for principal and interest is $409.40, precisely the amount set in the Loan Modification, for a total of $3684.60. As for escrows, for the months of April 2015 through September 2015, the monthly amount is itemized at $330.60, which again is consistent with a total monthly payment of $740 effective March 1, 2015 per the Short Letter dated May 20, 2015 (Exhibit F2). But for the months of October, November and December 2015, the itemized amounts for escrows in Exhibit J are increased to $351.60.

Reviewing the Payment History, Exhibit G1, on July 30, 2015 the Bank disbursed $1405.00 for insurance and on September 23, 2015 disbursed $1227.17 for taxes. (See Exhibit G2 for Transaction Code Definitions). As previously discussed, the monthly amount for escrows is adjusted from time-to-time as amounts for such items change. Accordingly, finding that insurance and taxes were paid in July and September, 2015, respectively, no irregularity is

14

caused by an adjustment to the monthly escrow amount for subsequent months and increasing it to $351.60. The court finds the itemized total for escrows set at $3038.40 in Exhibit J is accurate and reliable. Finally, the itemized monthly amount for late charges of $16.37 is also accurate and reliable, for a total for the nine months being $147.33.

Again, as Mr. Baker explained, the itemized amounts from Exhibit J were the amounts set forth in the Notice of Right to Cure Default dated December 17, 2015, prepared by DuaneMorris. It is clear DuaneMorris utilized figures and data furnished by the Bank. To recap, the amounts itemized in the notice are:

| | |
|---|---|
| 9 Payments of Principal and Interest | $3684.60 |
| Late Charges | $147.33 |
| Escrow Payments | $3038.40 |
| Total | $8527.65 |

The court finds the itemization and total for amount due to cure the default as set forth in the Notice of Right to Cure Default dated December 17, 2015 are accurate, trustworthy and reliable.

Upon reviewing the balance of the Notice of Right to Cure (Exhibit I), the Court finds the content of the Notice otherwise complies with the 35-day notice required by sub-section 1, it contains the information required under section 1-A, and it was issued in the manner required by sub-section 3(B), by first class mail with a certificate of mailing. 14 M.R.S. §6111(1), (1-A), (3). The Certificate of Mailing attached to the notice is dated December 17, 2015. Allowing for the three days per subsection-3B, a due date of January 24, 2016 as the last day to cure the default

complies with §6111(1). And the notice properly itemizes past due amounts and otherwise properly informs Defendants of various rights and options as required by subsection 1-A.

6.Mediation

The requirement of mediation was satisfied in accordance with 14 M.R.S. §6321-A(9) per the Mediator's Report dated November 18, 2016.

7. Military Service

The Defendants appeared for trial.

In conclusion, the Court therefore finds that the Bank has established by a preponderance of the evidence that it is entitled to Judgment of Foreclosure and Sale.[7] Judgement of Foreclosure and Sale shall be issued pursuant to the proposed judgment provided by Plaintiff, and that these findings, decision and order shall be incorporated therein. Pursuant to Rule 79(a) this order shall be incorporated by reference in the Civil Docket.

Dated: _____ , 2018

_____
Justice, Superior Court

---

[7] The Court is cognizant of the Law Court's recent decision of *M & T Bank v. Plaisted*, 2018 ME 121 decided on August 16, 2018 indicating unredacted records are necessary for submission pursuant to the business record exception. The case at hand was tried on July 6, 2018 prior to the *M & T Bank v. Plaisted* decision. In addition, unlike the situation in *M & T Bank v. Plaisted*, in this case there is but a single lender/servicer involved that generated the business documents and the issues of untrustworthiness that were apparent in *M & T Bank v. Plaisted* are not present in this case.

16

STATE OF MAINE                                    SUPERIOR COURT
AROOSTOOK, ss.                                    CIVIL DIVISION
                                                  DOCKET NO. RE-16-34

                                          )
TD BANK, N.A. f/k/a First                 )
Massachusetts Bank, N.A.,                  )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )    **ORDER AND DECISION ON PLAINTIFF'S**
                                          )    **MOTION FOR SUMMARY JUDGMENT**
TERRY CORMIER and JODINA                  )
CORMIER,                                  )
                                          )
        Defendants.                       )

Before the court is plaintiff TD Bank's motion for summary judgment in a foreclosure

action against defendants Terry and Jodina Cormier. Having reviewed the parties' filings and

their respective arguments, and for the reasons stated below, plaintiff's motion to for summary

judgment is DENIED. [1]

## BACKGROUND

The following facts, viewed in the light most favorable to plaintiff as the non-moving

party, are undisputed and established in the summary judgment record.

On August 22, 2001, defendants Terry and Jodina Cormier executed and delivered to TD

Bank a note in the amount of $57,000.00, which was secured by a mortgage on the property

located at 83 Pine Street, Presque Isle, Maine, and recorded in the South Aroostook County

Registry of Deeds in Book 3550, Page 118. (Supp'g S.M.F. ¶¶ 7-8.) TD Bank alleges it is, and

has been since the inception of the loan's origination, the holder of the note and the mortgage.

(Id. ¶ 12.)

---

[1] As discussed with counsel at the hearing held August 2, 2017, a denial of summary judgment is
in no way indicative of the outcome at trial, where Plaintiff would have a live witness to lay the
appropriate foundation for admission of business records.

1

On November 21, 2014, the Cormiers executed and delivered to TD Bank a loan modification agreement, which provided a fixed interest rate and set new monthly principal and interest payments. (Id. ¶ 10.) TD Bank alleges that the Cormiers failed to make the April 2015 payment and all subsequent payments. (Id. ¶ 15.)

On December 17, 2015, TD Bank sent a right to cure notice to the Cormiers, which TD Bank alleges was in compliance with 14 M.R.S. § 6111. (Id. ¶ 16.) The Cormiers have not cured their payment default. (Id. ¶ 20.)

The parties participated in mediations on July 27, 2016, and November 18, 2016, but have not resolved the case. (Id. ¶ 29.)

## DISCUSSION

Under M.R. Civ. P. 56, summary judgment is appropriate when review of the parties' statements of material facts and record evidence to which the statements refer, considered in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact that is in dispute and the moving party is entitled to judgment as a matter of law. Beal v. Allstate Ins. Co., 2010 ME 20, ¶ 11, 989 A.2d 733. A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between two competing versions of the facts. Stewart-Dore v. Webster Hosp. Ass'n, 2011 ME 26, ¶ 8, 13 A.3d 773. The evidence offered to establish a dispute as to material fact, submitted in opposition to a motion for summary judgment, "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." Estate of Smith v. Cumberland Cnty., 2013 ME 13, ¶ 19, 60 A.3d 759.

When acting on a motion for summary judgment, a court may not make inferences based on credibility or weight of the evidence. Arrow Fastener Co. v. Wrabacon, Inc., 2007 ME 34, ¶

2

16, 917 A.2d 123 (citing Emerson v. Sweet, 432 A.2d 784, 785 (Me. 1981)). A party who moves for summary judgment is entitled to a judgment only if the party opposing the motion, in response, fails to establish a prima facie case for each element of his cause of action. Lougee Conservancy v. CitiMortgage, Inc., 2012 ME 103, ¶ 12, 48 A.3d 774.

Defendants argue that the Knox affidavit submitted in support of TD Bank's motion for summary judgment is untrustworthy and therefore shouldn't be considered. This affidavit and its supporting documents provide proof of the necessary elements to plaintiff's motion for summary judgment. See Bank of Am., N.A. v. Greenleaf, 2014 ME 189, ¶ 18, 96 A.3d 700 (listing the eight elements of proof necessary to support a judgment of foreclosure).

An affidavit of a custodian of business records must demonstrate that the affiant meets the requirements of M.R. Evid. 803(6). Business records kept in the course of regularly conducted business may be admissible notwithstanding the hearsay rule if the necessary foundation is established "by the testimony of the custodian or other qualified witness." M.R. Evid. 803(6). "A qualified witness is one who was intimately involved in the daily operation of the business and whose testimony showed the firsthand nature of his knowledge." HSBC Mortg. Servs. v. Murphy, 2011 ME 59, ¶ 9, 19 A.3d 815 (quoting Bank of Am., N.A. v. Barr, 2010 ME 124, ¶ 19, 9 A.3d 816) (quotation marks omitted)).

The custodian or qualified witness must establish the following:

(a)     The record was made at or near the time by—or from information transmitted by—someone with knowledge;
(b)     The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
(c)     Making the record was a regular practice of that activity;
(d)     All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11), Rule 902(12) or with a statute permitting certification; and
(e)     Neither the source of information nor the method or circumstances of reparation indicate a lack of trustworthiness.

3

M.R. Evid. 803(6); Murphy, 2011 ME 59, ¶ 10, 19 A.3d 815.

Plaintiff has established the necessary foundation as to elements (a)-(e) through the Knox affidavit. (See Knox Aff. ¶¶ 1-6.) However, defendants point to an "inconsistency" which they allege make TD Bank's business records untrustworthy and therefore inadmissible.

In evaluating trustworthiness, courts consider factors such as "the existence of a motive and opportunity to prepare an inaccurate record, long delay prior to their preparation, the nature of the information recorded, the systematic checking, regularity and continuity in maintaining the records and the business' reliance on them." E. N. Nason, Inc. v. Land-Ho Dev. Corp., 403 A.2d 1173, 1179 (Me. 1979). When evaluating a motion for summary judgment, the court must consider the trustworthiness of any affidavits submitted in support of the motion. Murphy, 2011 ME 59, ¶ 11, 19 A.3d 815.

Defendants claim that the Knox affidavit is inaccurate because it misstates the date of the Cormiers' last payment. The Knox affidavit states that the Cormiers failed to make the April 2014 payment and all subsequent payments, and the records provided by TD Bank support this. (See Knox Aff. ¶ 15; Ex. E.) TD Bank has established, based on the business records provided, that the Cormiers made payments of $410 in April, May, and June, but that those payments were applied to earlier months that had not been paid. (Pl.'s Reply Br. 4.)

However, the Cormiers allege that TD Bank stopped accepting payments after their June 2015 payment. (See Jodina Cormier Aff. ¶ 9.) This occurred 6 months prior to TD Bank sending them a notice of right to cure and thus prior to any acceleration. (Id.; Knox Aff. ¶ 14.) This long delay in preparation and questionable motive of TD Bank makes the business records untrustworthy. See E. N. Nason, 403 A.2d at 1179. Thus, the foundation is insufficient to satisfy the requirements of Rule 803(6), and the Court cannot consider them.

4

Since the Court cannot consider the Knox affidavit, and therefore cannot consider the supporting business records, such as the note and mortgage, plaintiff TD Bank's motion for summary judgment is denied.

The entry is:

1. Plaintiff TD Bank, N.A.'s motion for summary judgment is DENIED.
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: _August 7 2017_

Harold Stewart
Justice, Maine Superior Court

5